Jose M. ALVARADO,[1] Plaintiff,

v.

H. KERRIGAN and Don Galgano, Defendants.

No. 99 Civ. 11657(DC).

United States District Court, S.D. New York.

March 30, 2001.

Jose M. Alvarado, Collins Correctional Facility, Collins, New York, Plaintiff, pro se.

Eliot Spitzer, Attorney General of the State of New York by Edward Rodriguez,

---

1. Plaintiff's name is misspelled as "Alvardo" in the caption of the complaint, but otherwise appears as "Alvarado" in the body of the complaint.

Assistant Attorney General, New York, NY, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Jose Alvarado, an inmate in the New York State prison system, brings this action pursuant to 42 U.S.C. § 1983 against defendants H. Kerrigan and Don Galgano—respectively, a sergeant and a senior corrections counselor at Sing Sing Correctional Facility ("Sing Sing"). In his complaint, plaintiff alleges that defendants deprived him of a fair disciplinary hearing in violation of the Eighth and Fourteenth Amendments. Defendants move for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c). For the reasons that follow, defendants' motion is granted, and the complaint is dismissed.

## BACKGROUND

### A. Facts

The facts alleged by plaintiff are assumed to be true for purposes of this motion, and may be summarized as follows:

On August 8, 1997, when Sing Sing had been under "lockdown" for approximately four days, an unidentified Sing Sing corrections officer conducted a search of plaintiff's cell.[2] The search revealed no contraband. (Comp.¶ 1). After the search, plaintiff was informed by either the same or another "unknown" corrections officer that the prison administration had received information about plaintiff from a confidential informant and that, based on that information, plaintiff was going to be placed on "investigation status" keeplock pending investigation. (*Id.* ¶ 2).

The next day, August 9, plaintiff was issued a disciplinary report authored by defendant Kerrigan for assault on an inmate. The report, which is annexed to the complaint, stated as follows:

Based on an ongoing investigation regarding several serious inmate assaults in the HBB yard, and information provided by a confidential source, inmate Alvarado ... did stab inmate Serrano [on August 4, 1997].

(*Id.* ¶¶ 3, 4, Ex. 1).

Thereafter, plaintiff requested "employee assistance" to help prepare for his Tier 3 Hearing.[3] (*Id.* ¶ 4). When he met with employee assistant G. Burns on August 13, plaintiff made a number of evidentiary requests, including: copies of all unusual incident reports; the opportunity to view the videotape; a written statement from Serrano indicating whether Alvarado had stabbed him; the names of individuals "in charge of the investigation"; all medical reports relating to the stabbing; a review of "how the confidential informant was determined to be a reliable source in the past"; and the identity of personnel "[w]ho determined that the [informant] was reliable." (*Id.* ¶ 5).

In response to these requests, Burns provided plaintiff with certain information. He stated that Serrano was no longer incarcerated at Sing Sing, and that there were no unusual incident reports relating to the stabbing. Burns further informed plaintiff that the "C.I.U." was in charge of the investigation, and that the reliability of

---

2. Although plaintiff is now incarcerated at Collins Correctional Facility, all events relevant to the complaint took place at Sing Sing and Southport.

3. A Tier 3 hearing is a prison procedure in which "the most serious violations of institutional rules" are adjudicated. *Colon v. Howard*, 215 F.3d 227, 229 n. 1 (2d Cir.2000) (quoting *Walker v. Bates*, 23 F.3d 652, 654 (2d Cir.1994)).

the informant would be determined by the hearing officer. Burns also denied plaintiff access to medical reports. He did provide plaintiff with a log book entry for August 4, 1997 describing the assault. (*Id.* ¶ 6, Ex. 2). Plaintiff refused to sign off on the employee assistant's sheet because he was dissatisfied with the assistance Burns provided. (*Id.* ¶ 7).

On August 14, 1997, a Tier 3 hearing on the inmate assault charge was held. At the hearing, which was conducted by defendant Galgano, plaintiff pleaded not guilty to the assault charge and informed the hearing officer of his dissatisfaction with Burns's assistance. (*Id.* ¶ 8). Galgano issued plaintiff the unusual incident report, which did not list plaintiff as one of the participants. (*Id.,* Ex. 3). Plaintiff testified that he did not assault Serrano, and that he was in a different part of the HBB yard when the assault occurred. (*Id.* ¶ 9). In addition to testifying, plaintiff made several requests of Galgano. He asked to question witnesses—including Serrano, Tanco (another inmate), corrections officer Sierra, and defendant Kerrigan—and asked to review the videotape. (*Id.* ¶¶ 9–10). Galgano denied plaintiff's request to view the videotape, and stated that he had watched the videotape and plaintiff was not on it. (*Id.*). Galgano then adjourned the hearing. (*Id.* ¶ 11).

The Tier 3 hearing resumed the next day, August 15. At that time, Kerrigan testified that he did not personally interview any of the confidential informants, and that when he arrived at the HBB yard, the incident was under control. (*Id.* ¶¶ 13–14). Kerrigan further testified that the "CIU's" ordered him to "write plaintiff up" for assaulting Serrano. (*Id.* ¶ 16). Two witnesses testified on behalf of plaintiff. The first witness, Correction Officer Sierra, stated that plaintiff was not in-

volved in the assault, and that he (Sierra) had been focused on the assault as it occurred in the HBB yard. (*Id.* ¶ 17). The second witness, an inmate named Tanco, testified that plaintiff was with him at the time of the assault, approximately 200 feet from where the assault occurred. (*Id.* ¶ 18). Galgano adjourned the hearing to interview confidential sources. (*Id.* ¶ 19).

On August 20, 1997, plaintiff appeared for the third day of his Tier 3 hearing. At that time, Galgano denied plaintiff's request to interview Serrano on the ground that Kerrigan had interviewed Serrano and Serrano refused to cooperate or "make any statement regarding th[e] assault." (*Id.* ¶ 20, Ex. 5). Testimony from two confidential sources was taken (outside the presence of plaintiff), but Galgano refused to disclose the identity of the informants or the exact details of their testimony, citing the need to protect the identity and safety of the informants. (*Id.* Ex. 6). Based on this testimony, Galgano found plaintiff guilty of assaulting Serrano, and sentenced him to five years' confinement in the Special Housing Unit ("SHU") and a loss of five years of good time credit. (*Id.* ¶¶ 22–23, Ex. 7).

Alvarado appealed Galgano's determination on August 29, 1997. (*Id.* ¶ 24). On October 29, 1997, Galgano's decision was reversed, and a new Tier 3 hearing was ordered. (*Id.* ¶ 26, Ex. 9). At the second Tier 3 hearing, held on November 5, Lieutenant Heck of Southport Correctional Facility ("Southport")[4] found Alvarado not guilty of the assault on Serrano. (*Id.* ¶ 27, Ex. 10). In rendering his decision, Lieutenant Heck found that the unusual incident reports implicated plaintiff and that the information provided to Kerrigan was not reliable. (*Id.* ¶ 28). Plaintiff was released from the Southport SHU on No-

---

4. Alvarado was transferred from Sing Sing to Southport on September 9. (Comp. ¶ 25).

vember 27, 1997, after spending a total of 93 days in SHU confinement.[5] (*Id.* ¶ 29).

## B. *Prior Proceedings*

Plaintiff commenced this action by submitting his original complaint to the Court's *Pro Se* Office on September 23, 1999. Plaintiff was granted *in forma pauperis* status, the complaint was filed with the Clerk of the Court, and the case was assigned a docket number on November 30, 1999. Defendants filed an answer on April 10, 2000.

The complaint, broadly construed, alleges four violations of plaintiff's due process rights under the Fifth and Fourteenth Amendments. Plaintiff bases his claims on the following conduct: (1) Galgano's refusal to allow plaintiff to review the evidence used against him at the Tier 3 hearing; (2) Galgano's refusal to allow plaintiff to interview the alleged victim; (3) Galgano and Kerrigan's alleged conspiracy to find plaintiff guilty of assault when "it was common knowledge among [Sing Sing] correction officials" that other inmates had already been charged in connection with the same assault; and (4) Kerrigan's interview with Serrano and subsequent report (to Galgano) of Serrano's refusal to cooperate. (Comp.¶¶ 32–38).

By notice of motion dated May 2, 2000, plaintiff moved for summary judgment on the ground that a prisoner may assert a § 1983 damages claim for time spent in administrative confinement even if the underlying disciplinary decision is overturned on appeal. (Pl. Mem. of Law in Supp. of Mot. for Summ. J. at 4). At a conference held on June 23, 2000, the Court denied the motion without prejudice to renewal following the completion of discovery.[6]

Defendants filed the instant motion on October 13, 2000.[7]

## DISCUSSION

Defendants make four arguments in support of their motion for judgment on the pleadings: (1) plaintiff's procedural due process claims must be dismissed because he has not sufficiently alleged the deprivation of a liberty interest; (2) plaintiff fails to state a claim against Kerrigan because he has no constitutional right to be free from false charges; (3) plaintiff's claims against Kerrigan is barred by the doctrine of qualified immunity; and (4) plaintiff has failed to exhaust his administrative remedies against Kerrigan. Because I find that plaintiff has failed to state a section 1983 claim against either defendant, defendants' motion is granted and the complaint is dismissed.[8]

---

**5.** According to plaintiff, he spent 93 days in the SHU in "23 hour lock-up" and was subjected to a variety of restrictions, including only three ten-minute showers per week, handcuffs and leg irons when transported outside his cell, one hour of exercise a day in a "cage-like structure," and loss of telephone, packages, commissary, recreation, religious services, and "plaintiff's fiancee and marriage." (Comp.¶ 40).

**6.** Plaintiff also requested that the Court appoint fellow inmate Anthony Gill as plaintiff's guardian ad litem "to assist *pro se* plaintiff throughout the pending action." This request was denied on January 11, 2000.

**7.** Defendants were originally to move for judgment on the pleadings in July 2000, but they failed to comply with the briefing schedule or to request an extension. Notwithstanding this failure to timely file the motion for judgment on the pleadings, the Court permitted defendants to file their motion no later than October 13, 2000. Defendants did so.

**8.** Because I find that the complaint should be dismissed for failure to state a claim under § 1983, I need not address defendants' remaining arguments.

## A. Judgment on the Pleadings Standard

■ A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is analyzed under the same standard applicable to a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). Accordingly, judgment on the pleadings is appropriate only if, drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that no material issues of fact need to be resolved and that the moving party is entitled to judgment as a matter of law. *See id.; Carballo ex rel. Cortes v. Apfel*, 34 F.Supp.2d 208, 214 (S.D.N.Y.1999). In deciding a motion for judgment on the pleadings, a court may consider the pleadings and exhibits attached thereto, and statements or documents incorporated by reference in the pleadings. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993). Because plaintiff has attached various documents as exhibits to the complaint, they are properly considered on this motion.

## B. Procedural Due Process Claims

■ To state a claim for procedural due process violations under § 1983, a prisoner must make two showings: (1) that he enjoyed a protected liberty interest, and (2) that deprivation of that interest occurred without due process of law. *See Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir.2001). As a result of the Supreme Court's decision in *Sandin v. Conner*, satisfaction of the first prong—demonstration of a protected liberty interest—"also requires a two-part analysis." *Tellier v. Fields*, 230 F.3d 502, 511 (2d Cir.2000). Thus, a prisoner suing under § 1983 for denial of due process at a prison disciplinary hearing must establish both that the disciplinary confinement constituted "an atypical and significant hardship" in relation to the ordinary incidents of prison life and that "the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

■ A disciplinary sanction does not meet the *Sandin* "atypical and significant hardship" standard unless it is "onerous." *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir.1999). While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, *see id.*, the Second Circuit recently suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship. *See Colon v. Howard*, 215 F.3d 227, 231–32 (2d Cir.2000) (discussing *Sealey v. Giltner*, 197 F.3d 578, 589–90 (2d Cir.1999), in which confinement of 101 days was held not to have met *Sandin* standard).[9] The Second Circuit has also emphasized, however, that a court undertaking a *Sandin* analysis must consider both the duration of the challenged confinement as well as the conditions of that confinement. *See Rivera v. Goord*, 119 F.Supp.2d 327, 344 (S.D.N.Y.2000) (citing *Ayers v. Ryan*, 152 F.3d 77, 83 (2d Cir.1998); *Arce v. Walker*, 139 F.3d 329, 336 (2d cir.1998); *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir.1997)).

9. Nevertheless, the *Colon* court also indicated that it "d[id] not exclude the possibility that SHU confinement of less than 101 days could be shown on a record more fully developed than the one in *Sealey* to constitute an atypical and severe hardship under *Sandin*." *Colon*, 215 F.3d at 232 n. 5.

Applying these standards to the instant case, I find that plaintiff has failed to sufficiently allege an atypical and significant hardship. A number of district courts in this Circuit have found that periods of SHU confinement around or exceeding 93 days did *not* constitute a deprivation under *Sandin. See Williams,* 111 F.Supp.2d at 289 (75 days confinement); *Jackson v. Johnson,* 15 F.Supp.2d 341, 361–62 (S.D.N.Y.1998) (99 days); *Trice v. Clark,* No. 94 Civ. 6871(SAS), 1996 WL 257578 at *3, 1996 U.S. Dist. LEXIS 6644, at *8 (S.D.N.Y. May 16, 1996) (150 days). Taken in conjunction with the Second Circuit's decisions in *Sealey* and *Colon,* the cases show a consensus in this Circuit that an inmate's confinement in the SHU for 101 days or less—without further deprivation—does not constitute an atypical or significant hardship.

Nor has plaintiff alleged conditions that elevate his confinement to the level of deprivation required under *Sandin.*[10] The restrictions experienced by plaintiff—loss of phone privileges, one hour of exercise a day, three showers per week—are characteristic of SHU confinement in the New York State prison system. *See Williams v. Goord,* 111 F.Supp.2d 280, 289 (S.D.N.Y. 2000) (citing N.Y. Comp.Codes R. & Regs. tit. 7, §§ 300.1–.14, 302, 304.3, 304.5 (1999)). These conditions, while perhaps undesirable, "generally do[ ] not impose [an] atypical and significant hardship because [they] remain[ ] within the normal range of prison custody." *Trice,* 1996 WL 257578 at *2, 1996 U.S. Dist. LEXIS 6644, at *8 (internal quotation marks omitted). Given the nature of his SHU confinement,

plaintiff's allegations thus do not, as a matter of law, amount to an atypical or significant hardship under *Sandin.* Accordingly, plaintiff's procedural due process claims against Kerrigan and Galgano must be dismissed. This reasoning applies to all four of plaintiff's claims, as all four claims are premised on an alleged protected liberty interest, an interest that is simply not implicated by a 93–day stay in the SHU.[11]

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted, and the complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

---

**10.** I note that the facts of plaintiff's confinement are not in dispute for the purposes of this motion, as I must assume the allegations of the complaint to be true.

**11.** In paragraphs 40 and 42 of the complaint, plaintiff also mentions the Eighth Amendment in passing, together with a reference to the Fourteenth Amendment. The allegations of paragraphs 40 and 42, however, make it clear that plaintiff is in actuality asserting due process claims. for the reasons set forth above, no such claim exists on the facts alleged here.