Martin L. BASKERVILLE, Plaintiff,

v.

M. BLOT, Correction Officer; F. Carabello, Correction Officer; C. Holder, Correction Officer Sgt.; Z. Diaz, Nurse; E. Williams, Nurse, Defendants.

No. 01 Civ. 4378(SHS).

United States District Court,
S.D. New York.

Sept. 18, 2002.

Martin L. Baskerville, Sonyea, NY, Pro se.

## OPINION & ORDER

STEIN, District Judge.

Martin Baskerville, an inmate presently incarcerated at Elmira Correctional Facility, brings this action *pro se* pursuant to 42 U.S.C. § 1983 alleging that defendants violated his constitutional rights under the First and Eighth Amendments of the Constitution at Sing Sing Correctional Facility in August 2000. Specifically, he alleges that corrections officers have filed a frivolous misbehavior report against him in retaliation for his filing grievances and a lawsuit against the State of New York. The allegedly frivolous misbehavior report resulted in his wrongful disciplinary confinement. Plaintiff further alleges that medical personnel have failed to provide him with adequate care, that a corrections officer assaulted him, and that his legal materials were stolen, thereby denying him access to the courts.

Defendants Michael Blot, Frankie Carabello, Christopher Holder, Elizabeth Williams and Zina Diaz—all corrections officers or nurses employed by the New York State Department of Corrections—now move for dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) plaintiff has failed to exhaust his administrative remedies to certain claims as required by the Prison Litigation Reform Act of 1995, as amended, 42 U.S.C. § 1997(e)(a); (2) plaintiff has failed to state a claim on which relief may be granted; (3) plaintiff has failed to allege any personal involvement by defendants in certain of the alleged constitutional violations; (4) defendants are entitled to qualified immunity; and (5) this Court lacks jurisdiction over the subject matter of this action pursuant to the Eleventh Amendment. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the complaint and are assumed to be true for purposes of this motion. On August 2, 2000, Baskerville was transported to Sing Sing Correctional Facility in connection with an action he had filed in the New York Court of Claims that was scheduled to go to trial on August 3, 2000. (Complaint at ¶ 2.) Shortly after his arrival at Sing Sing, he was interviewed by Nurse Zina Diaz, who provided him with prescribed medication for his high blood pressure. (*Id.* at ¶ 4.) In addition, Nurse Elizabeth Williams ordered a refill of that prescription, but informed plaintiff that because the facility's pharmacy had been closed for three months, she would have to order the medication from an outside pharmacy. (*Id.*)

Baskerville alleges that after the meeting with the nurses, his personal property

was searched, itemized and returned to him. (*Id.* at ¶ 5.) He was then escorted to the Special Housing Unit ("SHU"), where he would be housed while awaiting his trial. (*Id.* at ¶ 6.) Plaintiff claims that he was searched for a second time and his personal property—including legal documents—was confiscated by unnamed correctional officials. He was then taken to his assigned cell in SHU. (*Id.*) Baskerville further alleges that he requested that the corrections staff return his legal materials so he could review them in preparation for his trial the next day. However, his request was denied and he was informed that his legal documents would not be returned until all of his personal property was searched. (*Id.* at ¶ 7.)

At approximately 10:00 p.m. that night, Baskerville's personal property—including his legal materials—was allegedly returned to him in a garbage bag that was in "disarray." (*Id.* at ¶ 8.) He complained verbally to the area supervisor about the condition in which his property and legal materials were returned to him. (*Id.* at ¶ 9.) He then discovered that certain of his legal documents were missing. (*Id.*) The next day, when he appeared before the Honorable Stephen J. Mignano, Justice, New York Court of Claim, for his trial, he informed the court that the legal materials he needed for the trial had been stolen. (*Id.* at ¶ 10.) As a result, the trial was adjourned. (*Id.*)

Plaintiff also alleges that on August 6, 2000, he requested that he be seen by the facility's medical staff during a sick call because he needed a refill of his blood pressure medication, but Nurse Williams told him that the medication had not yet arrived from the outside pharmacy. (*Id.* at ¶ 11.)

The next day, August 7, while he was proceeding to the recreation area, he was stopped by Corrections Officer Carabello and directed to a flight of stairs to be pat frisked prior to entering the recreation yard. (*Id.* at ¶ 13.) While awaiting at the top of the stairs, plaintiff overheard an altercation taking place between Corrections Officer Blot and Patrick Graham, an inmate, during which Blot threatened to "kick Graham's ass." (*Id.* at ¶ ¶ 13, 14.) Baskerville then decided "not to participate in recreational activity in fear that he would be treated in the same manner as inmate Graham," and instead returned to his cell. (*Id.* at ¶ 15.)

While being escorted back to his cell by Carabello, he encountered Blot, who had just finished locking Graham in his cell. (Compl. at ¶ 16.) As plaintiff awaited the opening of his cell door, Blot allegedly grabbed him from behind, placed him in a choke hold, shoved him into the bars of the cell, and yelled "[y]ou want to file [g]rievances and law suit and complaint, your nothing but a coward do you understand me." (*Id.*) Blot then tightened his "violent choke hold" until Baskerville was on the verge of collapsing and then "violently shove[d]" him into his cell. (*Id.*)

Following the incident, Ms. Diaz evaluated him by allegedly simply looking through the cell door. (*Id.* at ¶ 18.) Later that day, while his injuries were being photographed, Christopher Holder, the area supervisor, allegedly told plaintiff that "I should have fucked you up the minute you entered the unit." (*Id.* at ¶ 19.)

That same day, Baskerville was issued a misbehavior report signed by Blot and Carabello and endorsed by Holder. (*Id.* at ¶ ¶ 20, 21.) He was charged with refusing a direct order, harassment, inmate movement, lying, and failing to comply with pat frisk procedures. (*Id.*) In addition, Holder issued a "Restraint Order" that required that he be placed on full restraints whenever he stepped outside his cell. As a result, plaintiff alleges that on August 9,

2000, he was forced to wear leg irons while taking a shower. (*Id.* at ¶ 22.) He claims that he was eventually allowed to speak to Deputy Superintendent of Security William Connelly, who reviewed the misbehavior report and determined that the restraint order was unwarranted since he had not violated any rules or regulations. (*Id.* at ¶ 23.)

Baskerville alleges that a Tier III disciplinary hearing regarding the August 7 misbehavior report was scheduled to commence on August 13 at Sing Sing, but was postponed. (*Id.* at ¶ 24.) On August 14, he was transferred back to Elmira, where he was placed in pre-hearing keeplock until August 22. (*Id.*) Plaintiff claims that Sergeant Alan Erickson at Elmira interviewed him, reviewed the misbehavior report, determined that he was not guilty of the charges and directed that he be released from keeplock. (*Id.*) On September 1, 2000, Deputy Superintendent of Administration William J. Hopkins administratively dismissed the misbehavior report. (*Id.* at ¶ 26.)

Plaintiff also alleges that on August 22, the medical staff at Elmira assessed the injuries he suffered on August 7 at Sing Sing. (*Id.* at ¶ 25.) He claims that after he was "properly medically evaluated," back x-rays were taken, medications were prescribed and he was referred to a doctor at the facility. (*Id.*)

Baskerville claims that the "frivolous" misbehavior report was filed in retaliation for his seeking redress in a prior action before the Honorable Barbara S. Jones of this Court, *Baskerville v. Goord,* No. 97 Civ. 6413, and for his filing of grievances against corrections officials at Sing Sing. (Compl. at ¶ 27.) The filing of the "frivolous" misbehavior report was designed "to chill a person of ordinary firmness from continuing to engage in activity protected by the First Amendment," since its result significantly affected his day-to-day life in prison: he was placed in keeplock confinement at Sing Sing for seven days,[1] denied showers and phone privileges during that confinement, and placed in keeplock confinement at Elmira for an additional eight days.[2] (*Id.* at ¶ 28.) Plaintiff claims that Diaz and Williams violated his Eighth Amendment rights to be free from cruel and unusual punishment by failing to provide him adequate medical care for his injuries after the alleged assault and by failing to obtain his prescribed medication in a timely manner. (*Id.* at ¶ 29.) He also claims that he suffers from post-traumatic stress disorder, as well as neck and lower back injuries. (*Id.*) Plaintiff seeks unspecified monetary damages and injunctive relief.

Defendants have now moved to dismiss the complaint.

## DISCUSSION

### I. Standard for Motion to Dismiss the Complaint

In reviewing a motion to dismiss a complaint, a court must accept as true the factual allegations in the complaint and must read the pleadings in the light most favorable to and draw all reasonable infer-

---

1. Keeplock is a type of housing unit in New York prisons where the conditions are more restrictive than those for the general prison population. Prisoners may be placed in keeplock awaiting disciplinary or superintendent's hearings, pursuant to the disposition of such hearings, or awaiting transfer to another facility. The inmate is confined to his cell for 23 hours a day, with one hour spent outside the cell for exercise. *See* 7 N.Y.C.R.R. §§ 301.1—301.7; *Wells v. Wade,* No. 96 Civ. 1627, 2000 WL 1239085, at * 1 (S.D.N.Y. Aug. 31, 2000); *Jamison v. Dee,* No. 99 Civ. 5854, 2000 WL 502871, at * 1 n. 2 (S.D.N.Y. Apr. 27, 2000).

2. In addition, Baskerville alleges that defendants interfered with his right of access to the courts because his legal materials were searched, re-organized and taken.

ences in favor of the non-moving party. *See Weinstein v. Albright*, 261 F.3d 127, 131 (2d Cir.2001); *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). Dismissal of the complaint is only proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The review is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

"This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994). Where a plaintiff proceeds *pro se*, a court must construe the complaint liberally and " 'interpret [it] to raise the strongest arguments that [it] suggest[s],' " *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)), thus holding the *pro se* pleading "to less stringent standards than formal pleadings drafted by lawyers.. . ." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). In addition, the court may consider factual allegations made by a *pro se* plaintiff in opposition papers and other additional materials. *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir.1987); *Benitez v.*

*Straley*, No. 01 Civ. 0181, 2002 WL 485692 (S.D.N.Y. Mar. 27, 2002), at *2 (slip op.); *Johnson v. Eastchester Union Free Sch. Dist.*, No. 01 Civ. 2835, 2002 WL 449584, at *2 (S.D.N.Y. Mar. 22, 2002); *Burgess v. Goord*, No. 98 Civ.2077, 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan. 26, 1999). However, a *pro se* party's bald assertions of a constitutional violation without any factual predicate cannot survive even the most liberal standard accorded a Rule 12(b)(6) motion. *See McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir.1995).

## II. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), the United States Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." This requirement extends to cases in which a plaintiff seeks a remedy not available though the administrative process, such as monetary damages. *See Booth v. Churner*, 532 U.S. 731, 733–34, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). *Porter* mandates that every claim asserted by a prisoner must first be grieved administratively prior to seeking judicial relief.[3] Thus, a

---

**3.** Prior to the Supreme Court's decision in *Porter*, the U.S. Court of Appeals for the Sec-

ond Circuit had recognized certain exceptions to the PLRA's exhaustion requirement, in-

plaintiff may only pursue an action in federal court after exhausting "any available administrative remedies, including all appellate remedies provided within the system." *Waters v. Schneider*, No. 01 Civ. 5217, 2002 WL 727025, at *1 (S.D.N.Y. April 23, 2002) (citing *Fletcher v. Haase*, No. 99 Civ. 9549, 2002 WL 313799, at *1 (S.D.N.Y. Feb. 27, 2002)); *see also Webb v. Goord*, 192 F.Supp.2d 208, 211 (S.D.N.Y. 2002).

New York State's Inmate Grievance Procedure ("IGP") has established a three-step inmate grievance process available to prisoner to exhaust their administrative remedies. *See* N.Y. Correct. Law § 139; N.Y. Comp.Codes R. & Regs. tit. 7, § 701. Generally, the regulations require that an inmate first file a complaint with the inmate grievance resolution committee ("IGRC") within fourteen days of the alleged event. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.7(a)(1). The IGRC must then investigate and may resolve the issue informally within seven days. *Id.* at § 701.7(a)(3). If there is not an informal resolution, a hearing is held, and the inmate may appeal the result to the Superintendent of the facility within four days of receiving it. *Id.* at §§ 701.7(a)(4), (b). Finally, the inmate may appeal the Superintendent's decision to the Central Office Review Committee ("CORC") within four days of its receipt. *Id.* at § 701.7(c). The CORC, in turn, must render a decision within twenty days. *Id.*

Defendants contend that with the exception of plaintiff's inadequate medical care claim, Baskerville has failed to exhaust his administrative remedies. (Memorandum of Law in Support of Defendants' Motion

to Dismiss ("Def.Mem."), at 6.) Plaintiff argues that he has, in fact, exhausted the available administrative remedies as to all the claims he brings and that defendants' argument is moot. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.Opp.") at 5, ¶ 5.) He alleges that he filed an institutional grievance on October 30, 2000, which was forwarded to the Superintendent of Sing Sing on November 13, 2000. (Pl. Opp., Exhibit A.) Plaintiff further asserts that he received a final determination from the CORC on February 7, 2001. (*Id.*)

Defendants maintain, however, that it is Baskerville who is in "error". (Defendant's Reply Memorandum of Law In Support of Defendant's Motion to Dismiss ("Def.Reply") at 3.) They, again, contend that plaintiff never filed any grievances with respect to his claims of excessive force and denial of access to the courts, and thus did not exhaust his administrative remedies as to those claims. (Def. Reply at 2.) Defendants concede that Baskerville filed a grievance at Elmira on October 30, but argue that the subject of that grievance was not the alleged assault on August 7, but rather "dealt solely with plaintiff's complaint that, following the alleged August 7, 2000 use of force incident, the Sing Sing medical staff allegedly failed to properly examine him for possible injuries." (*Id.*) Defendants further state that "while plaintiff's October 30, 2000 grievance does contain a passing reference to his claim of alleged assault at Sing Sing on August 7, 2000, the gravamen of plaintiff's grievance is that he was denied medical care on that date." (*Id.*) They next contend that the New York State Department of Correc-

---

cluding excessive force and individualized retaliation claims, holding that these claims did not fall within the term of prison conditions. *See Lawrence v. Goord*, 238 F.3d 182 (2d Cir.2001); *Nussle v. Willette*, 224 F.3d 95, 99–100 (2d Cir.2000). However, the Supreme

Court's decision in *Porter* specifically overturned *Nussle v. Willette*. Under the PLRA, prisoners must administratively exhaust all claims, including excessive force and retaliation claims, prior to seeking judicial remedies.

tional Services ("DOCS") has established a grievance program with specific procedures that must be followed in order for a prisoner to exhaust his administrative remedies, as required by the PLRA. (*Id.*)

### A. Exhaustion of Excessive Force Claim

■ Drawing all inferences in plaintiff's favor, the Court concludes that Baskerville has alleged facts sufficient to indicate that he has exhausted his administrative remedies with respect to his claim of excessive force. The scope of the grievance that plaintiff filed on October 3 was much narrower than the issues he is raising in the instant complaint, as the gravamen of his grievance concerned the alleged denial of medical care after the alleged assault. (*See* Pl. Opp., Exhibit A.) Although plaintiff referred to the "use of force" and an "assault" in his grievance, he requested no action relating to this issue. (*Id.*) The final decision issued by the CORC, however, refers to notes made by corrections officials indicating that the alleged assault had been investigated at some point during the administrative process, but determined that no assault had taken place. (*Id.*) As the exhaustion requirement is designed to afford prison officials time and opportunity to address complaints prior to judicial intervention, *Porter,* 534 U.S. 516, 122 S.Ct. at 988, 152 L.Ed.2d 12, the apparent investigation of plaintiff's assault claim and the rendering of a decision by the CORC appears to be consistent with the purpose of the PLRA.

Although prison officials are entitled to require strict compliance with an existing grievance procedure, *see Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y. 2002), the Court declines under these circumstances to hold that plaintiff has failed to satisfy the PLRA's exhaustion requirement with respect to his excessive force claim. *See O'Connor v. Featherston,* No. 01 Civ. 3251, 2002 WL 818085, at \*2–3 (S.D.N.Y. Apr. 29, 2002); *Rodriguez v.*

*Hahn,* No. 99 Civ. 11663, 2000 WL 1738424, at \*2 (S.D.N.Y. Nov. 22, 2000); *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999,* No. 99 Civ. 3455, 2000 WL 274184, at \*3 (S.D.N.Y. Mar. 13, 2000). Defendants' motion to dismiss the excessive force claim on the ground that Baskerville has not exhausted his administrative remedies in regard to that claim is therefore denied.

### B. Exhaustion of Access to Court Claim

Defendants also move to dismiss Baskerville's claim of denial of access to the courts on exhaustion grounds. Although plaintiff generally asserts exhaustion of his claims, he does not allege that he has specifically exhausted his available administrative remedies as to his claim that he was denied his right of access to the courts. Nor do his submissions indicate any effort to exhaust this claim through DOCS' grievance procedures. As plaintiff was aware of DOCS' grievance procedures and has previously availed himself of them, his failure to seek administrative remedies with respect to his claim of denial of access to court cannot be excused. Because plaintiff has failed to exhaust his available remedies as to his claim of denial of access to court, defendants' motion to dismiss this claim is granted and the claim is dismissed without prejudice.

### III. First Amendment Retaliation Claims

Plaintiff alleges that in retaliation for his filing prison grievances and a prior lawsuit, (1) Blot physically assaulted him and Carabello failed to intervene, (2) Blot, Carabello and Holder issued a frivolous misbehavior report against him, and (3) Holder issued a restraint order placing various restrictions on him. (Compl. at ¶¶ 17, 27–28; Pl. Opp. at ¶ 7.) Plaintiff further claims that the retaliation resulted in his wrongful disciplinary confinement, his placement on

full restraints outside of his cell and the denial of certain privileges. Defendants contend that plaintiff's retaliation claims are without merit because he has failed to show that he received a false misbehavior report and that the misbehavior report was issued to him in retaliation for exercising a constitutionally protected right. (Def. Mem. at 22.)

■ It is well-established that prison officials may not retaliate against inmates for exercising their constitutional rights. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995). To survive a motion to dismiss, "a plaintiff asserting First Amendment retaliation claims must advance nonconclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir.2001); *see also Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir.2002); *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir.2000); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). Furthermore, a prisoner's retaliation claim must also be examined with "skepticism and particular care." *Colon*, 58 F.3d at 872. The Second Circuit has cautioned that retaliation claims by prisoners are "prone to abuse" as "[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983); *see Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001). Thus, a prisoner's claim of retaliation must be supported by specific and detailed factual allegations. *See Colon*, 58 F.3d at 872; *Flaherty*, 713 F.2d at 13.

### A. Engagement in Protected Conduct

■ Here, defendants do not dispute that Baskerville has set forth facts that, if proven, would satisfy the first prong of the retaliation standard that he engaged in protected conduct when he filed grievances and a prior lawsuit against corrections officers at Sing Sing.[4] A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment and retaliation in response to such a grievance is an actionable claim. *Morales*, 278 F.3d at 131; *Dawes*, 239 F.3d at 492–93; *Graham*, 89 F.3d at 80; *Walker v. Pataro*, No. 99 Civ. 4607, 2002 WL 664040, at *8 (S.D.N.Y. Apr. 23, 2002). Similarly, the filing of a lawsuit is a constitutionally protected activity. *See Bounds v. Smith*, 430 U.S. 817, 821–32, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Amaker v. Goord*, No. 98 Civ. 3634, 2002 WL 523371, *14 (S.D.N.Y. March 29, 2002). Nonetheless, given the specific pleading requirements for a prisoner retaliation claim, it is unclear whether Baskerville's unsubstantiated allegations set forth a sufficient connection between defendants' alleged actions and plaintiff's protected conduct to sustain a First Amendment retaliation claim.

### B. Adverse Actions

■ Plaintiff has adequately stated facts in compliance with the second element of the retaliation test, that defendants subjected him to adverse actions. To plead adequately that an adverse action was taken against him, plaintiff must allege that he was subjected to "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes*, 239

---

4. Although Baskerville alleges in the complaint that he actually filed grievances against corrections officials at Sing Sing, (Compl. at ¶¶ 27–28), he claims in his opposition papers that he merely threatened to file grievances rather than the actual filing of grievances. (Pl. Opp. at ¶ 12.) For purposes of this motion, the Court accepts as true the factual allegations in the complaint.

F.3d at 493. Baskerville's claim regarding the retaliatory assault sufficiently describes adverse conduct that would deter a reasonable inmate from exercising his constitutional rights. *See id; Rivera v. Goord,* 119 F.Supp.2d 327, 339–40 (S.D.N.Y.2000) (retaliatory assault constitutes adverse action).

■ Similarly, his allegations regarding the issuance of the false misbehavior report and the restraint order resulting in his confinement in keeplock, the denial of showers and telephone privileges, and the placement of restraints when he was outside his cell, sufficiently establish adverse acts. While a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986), he has "a right not to be subjected to false misconduct charges in retaliation for his exercise of a constitutional right." *Harris v. Keane,* 962 F.Supp. 397, 405 (S.D.N.Y.1997)(citing *Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995) and *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988)); *see also Nunez v. Goord,* 172 F.Supp.2d 417, 431 (S.D.N.Y.2001). His allegations regarding Blot's, Carabello's, and Holder's actions in issuing the misbehavior report and restraint order that resulted in his wrongful confinement and restrictions of his privileges, sufficiently describe adverse conduct that would "chill" a reasonable inmate from exercising his constitutional rights. *See Dawes,* 239 F.3d at 493; *Wells v. Wade,* No. 96 Civ. 1627, 2000 WL 1239085, at *3–4 (S.D.N.Y. Aug. 31, 2000) (filing of misbehavior report resulting in keeplock confinement is an adverse act likely to deter inmate from engaging in activity protected by the First Amendment).

*C. Causal Connection*

■ Allegations of adverse actions alone, however, are insufficient to establish retaliation absent facts supporting an inference of a causal connection between the adverse actions and the protected conduct. *See Dawes,* 239 F.3d at 492; *Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir.2000). The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action. In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation. *See Colon,* 58 F.3d at 872–73.

The Court agrees with defendants' contention that Baskerville does not allege a temporal proximity between his protected conduct and defendants' adverse acts. According to Baskerville, defendants retaliated against him for the filing of grievances and a prior lawsuit, *Baskerville v. Goord,* No. 97 Civ. 6413. The prior action, however, was filed in August 1997, more than three years before the retaliatory acts set forth in this complaint were alleged to have taken place. As to plaintiff's grievances, because he fails to set forth a time frame for the alleged filing of the grievances, the Court is unable to infer the existence of a causal relationship. Nor does plaintiff set forth any other details regarding his lawsuit and grievances, such as the nature of his claims or the parties or individuals involved.[5] In addition, he

5. None of the defendants in the instant action were named as defendants in the prior action,

fails to allege any prior incidents or confrontations with the officers in order to establish a plausible motivation for defendants to retaliate against him. Nonetheless, the administrative dismissal of the misbehavior report and the determination that the restraint order was unwarranted are facts that weigh in plaintiff's favor. Moreover, Blot's alleged comment during the assault—"you want to file lawsuits and grievances, you're nothing but a coward"—points to a retaliatory animus. (Compl. at ¶ 16; Pl. Opp. at ¶ 7.) Similarly, Holder's alleged statement to plaintiff—"I should have fucked you up the minute you entered the unit"—is circumstantial evidence of retaliatory intent.[6] (Compl. at ¶ 19.)

Even when Baskerville's allegations of retaliation are examined with "skepticism and particular care," they are sufficient, taken in the light most favorable to him, to withstand a motion to dismiss pursuant to Fed. R. 12(b)(6). Plaintiff has raised a colorable suspicion that the adverse actions taken against him may have been in retaliation for his protected conduct and he must be given an opportunity to conduct discovery regarding the claims. As these allegations are not "wholly conclusory," defendants' motion to dismiss the retaliation claim is denied.

## IV. Inadequate Medical Care Claims

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" on prison inmates. In order to establish a claim of inadequate medical care in violation of the Eighth Amendment, a prisoner must allege acts or omissions demonstrating " 'deliberate indifference' to a substantial risk of serious

harm . . . ." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference" to a prisoner's medical need is demonstrated by proof that prison officials "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The "deliberate indifference" standard consists of both an objective and a subjective component. First, the alleged deprivation must be "sufficiently serious" that it denies "the minimal civilized measures of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 297–303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir.2000). The "sufficiently serious" requirement " 'contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.' " *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990)). Second, a defendant must act with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *Hathaway*, 37 F.3d at 66; *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Deliberate indifference exists when a prison official

> knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

(Def. Mem. at 28.) However, the allegations in paragraphs 27 through 29 of the complaint make it clear that he seeks not to assert a claim of verbal harassment, but provides this information to support his retaliation claim.

---

*Baskerville v. Goord*, No. 97 Civ. 6413.

**6.** Defendants contend that Holder's alleged harassing comment did not violate plaintiff's constitutional rights as "mere verbal threats do not constitute a constitutional violation."

*Farmer,* 511 U.S. at 837, 114 S.Ct. 1970; *see Chance,* 143 F.3d at 703.

■ Negligent treatment or medical malpractice, or a claim based on differences of opinion as to matters of medical judgment, are insufficient to state an Eighth Amendment claim. *Estelle,* 429 U.S. at 105–07, 97 S.Ct. 285; *Cuoco v. Moritsugu,* 222 F.3d 99, 107 (2d Cir.2000). Rather, the alleged conduct must be such that it is "repugnant to the conscience of mankind" or "incompatible with the 'evolving standards of decency that mark the progress of a maturing society.'" *Estelle,* 429 U.S. at 102, 105, 97 S.Ct. 285. Thus, to establish deliberate indifference, plaintiff must demonstrate that the defendants "actually wish[ed] him harm, or at least, [were] totally unconcerned with his welfare." *Hathaway,* 37 F.3d at 69 (citation omitted).

*A. Nurse Diaz*

Baskerville claims that Nurse Diaz intentionally rendered improper treatment for a serious medical need. He alleges that she failed to evaluate properly the back and neck injuries he suffered as a result of Blot's assault, but merely made a "visual determination" and concluded that nothing was wrong. (Compl. at ¶ 18; Pl. Opp. at ¶ 9.) He also alleges that Diaz was aware of a prior injury to his back since she was previously involved with a surgery to remove staples from his back in mid–1998. (Pl. Opp. at ¶ 10.) He claims that she deliberately failed to treat him despite her knowledge that the injuries he sustained could cause further damage to his lower back. (*Id.*) After he was transferred to Elmira, the medical staff there "properly medically evaluated" his injuries, took x-rays, and referred him to a doctor at the facility. (Compl. at ¶ 25.)

Defendants contend, however, that Baskerville's claim is "groundless." (Def. Mem. at 10.) They contend that plaintiff's unspecified neck and back injuries were not urgent and life-threatening and therefore do not qualify as a sufficiently serious medical condition worthy of Eighth Amendment protection. (*Id.* at 17–18.) Defendants further claim that Baskerville merely disagrees with Diaz's treatment, which falls short of deliberate indifference as a matter of law.

■ Accepting the allegations against Diaz as true, as the Court must, they are sufficient to pass constitutional muster in the context of a Rule 12(b)(6) motion. Although it may become clear at a later stage that plaintiff's allegations regarding his neck and back injuries following the incident with defendant Blot are not adequately supported by the evidence, the issue on this motion is whether plaintiff is entitled to prove facts in support of his claim which would entitle him to relief. *See Chance,* 143 F.3d at 702.

Considering plaintiff's statements regarding the nature of the assault, his previous back injuries and surgery and his request for medical attention, he has alleged facts sufficiently indicating the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's normal activities; or the existence of chronic and substantial pain." *Id.* at 702. Moreover, his claim of inadequate care is further bolstered by his subsequent treatment at Elmira, where the medical staff took x-rays of his back, gave him medication and referred him to a doctor for the injuries that Diaz allegedly failed to treat. For the reasons noted, the Court concludes that the complaint alleges facts sufficient to satisfy the objective component of the deliberate indifference standard. *See Cole v. Artuz,* No. 97 Civ. 0977, 2000 WL 760749, at *5 (S.D.N.Y. June 12, 2000) ("[a] chron-

ic back injury may not be as dramatic as some other conditions found to satisfy the deliberate indifference standard, but it is not therefore insufficient as a matter of law") (citation omitted).

Plaintiff's allegations may also satisfy the subjective prong of the deliberate indifference test that Diaz knew of and disregarded an excessive risk to his health. Although his assertions could be viewed as a difference of opinion on his medical care—as defendants suggest—or mere negligence, plaintiff's claim that Nurse Diaz was aware of his prior back injuries but failed to conduct a physical examination after he requested medical attention, could amount to a showing of deliberate indifference. Under the circumstances, the nurse's alleged inaction could be viewed as a "conscious disregard" of Baskerville's medical needs at the time. The allegations can potentially show that he had a sufficiently serious injury and that Diaz acted with a culpable state of mind in failing to treat him, which constitute deliberate indifference in violation of the Eighth Amendment.

### B. Nurse Williams

Baskerville also alleges that Nurse Williams' failure to refill his blood pressure medication for several days violated his constitutional rights. (Complaint at ¶¶ 4, 11.) Defendants contend that plaintiff has failed to establish that Williams was deliberately indifferent to his serious medical needs. (Def. Mem. at 14, 19–22.) They first assert that since plaintiff does not allege that his high blood pressure condition was life threatening or fast-degenerating, it does not rise to a serous medical need. (*Id.* at 18–19.) They further contend that he has failed to allege that she disregarded an excessively serious risk to his life or health. (*Id.* at 20.) Plaintiff's allegations concerning Williams do not set forth facts sufficiently

establishing deliberate indifference to his medical needs. Viewed in the light most favorable to Baskerville, his prescription for high blood pressure arguably indicates that he may have an objectively serious medical condition that needed to be controlled through medication. *See Kaminsky v. Rosenblum*, 929 F.2d 922, 923 (2d Cir.1991) (high blood pressure, diabetes, angina, gout and an enlarged spleen held to be serious medical needs); *Thompson v. New York*, No. 99 Civ. 9875, 2001 WL 636432, at *5 (S.D.N.Y. Mar. 15, 2001) (motion to dismiss denied where plaintiff's alleged injury is so serious as to require ongoing medication over a period of months). Plaintiff, however, fails to allege facts sufficient to satisfy the subjective component; i.e., that Williams acted "with the requisite culpable mental state." *Hathaway*, 37 F.3d at 66. Plaintiff's allegations fail to establish that she knowingly and intentionally provided inadequate medical treatment or that she knew of and disregarded a substantial risk of serious harm to him. *See Farmer*, 511 U.S. at 837–38, 114 S.Ct. 1970. Baskerville admits that shortly after his arrival at Sing Sing he was provided with high blood pressure medication and that Williams ordered a refill. (Compl. at ¶ 4.) He also admits that she informed him that the refill of his medication would have to be ordered from an outside pharmacy because the facility's pharmacy had been closed for three months. (*Id.*)

Thus, Baskerville's sole contention appears to be that Williams' failure to obtain a refill of his high blood pressure medication within several days constitutes inadequate medical care. However, because his assertions do not show that Williams acted intentionally to withhold from him his prescribed medication or was in any way responsible for the delay in obtaining a refill of his medication from the outside pharmacy, he has failed to state an Eighth

Amendment claim of deliberate indifference to a serious medical need. *See McBride v. Gomez*, No. 93 Civ. 4933, 1994 WL 37816, at *2 (S.D.N.Y. Feb. 8, 1994) (motion to dismiss granted where plaintiff did not allege that the defendants acted intentionally to withhold from him the medication he sought).

*V. Deprivation of Due Process Claim*

■ Defendants argue that to the extent Baskerville seeks to assert that defendants violated his due process rights guaranteed by the Fourteenth Amendment by confining him in pre-hearing keeplock for a period of fifteen days, placing him in restraints outside his cell and restricting his shower and telephone privileges, his claims must be dismissed. To state a claim for procedural due process violations, a prisoner must establish: (1) that he enjoyed a protected liberty interest and (2) that deprivation of that interest occurred without due process of law. *See Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir.2001). Pursuant to the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), to establish a protected liberty interest, a prisoner must show that his disciplinary confinement constituted "an atypical and significant hardship" in relation to the ordinary incidents of prison life and that "the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (quoting *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293). A court must examine the circumstances of the confinement, including its duration, in determining whether a protected liberty interest is implicated. *Wright v. Coughlin*, 132 F.3d 133, 136–37 (2d Cir.1998); *Brooks v. DiFasi*, 112 F.3d 46, 48–49 (2d Cir.1997). The Second Circuit has instructed that "[a]lthough there is no bright-line regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' this standard will not be met unless the disciplinary and administrative sanctions are onerous." *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir.1999).

■ Plaintiff's confinement in pre-hearing keeplock for a period of fifteen days prior to the hearing on the misbehavior report and the loss of privileges did not give rise to a liberty interest. He does not allege that his confinement was in anyway "atypical or significant" or that the sanction was "onerous." Nor is there any indication that the keeplock confinement affected the overall length or was a "dramatic departure" from the basic conditions of his sentence. Absent allegations that his confinement was unusual, plaintiff's pre-hearing keeplock stay for fifteen days did not encroach on a protected liberty interest. *See Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir.1998)(pre-hearing confinement in keeplock for twenty-one days did not deprive prisoner of liberty interest); *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir.1998)(segregated confinement for eighteen days did not implicate liberty interest); *Frazier*, 81 F.3d at 317–18 (twelve days pre-hearing confinement plus loss of privileges did not deprive prisoner of liberty interest); *Gill v. DeFrank*, No. 98 civ. 7851, 2000 WL 270854, at *19 (S.D.N.Y. March 9, 2000) (keeplock confinement for fifteen days or less was not atypical or significant), *report and rec. adopted in relevant part*, 2000 WL 897152 (S.D.N.Y. 2000).

Nor do Baskerville's allegations regarding the restrictions placed upon him sufficiently establish a deprivation of a liberty interest. His placement in restraints and the loss of shower and telephone privileges were not unusual for keeplock confinement in the New York State prison system. *See Alvarado v. Kerrigan*, 152 F.Supp.2d 350,

355 (S.D.N.Y.2001). These conditions, while undesirable, did not deprive him of his right to due process under the Fourteenth Amendment. *See Arce*, 139 F.3d at 337 ("Even assuming that the additional deprivations of communal religious services and out-of-cell exercise for 15 days caused the level of Arce's hardship to exceed the hardship at issue in *Sandin*, any difference is significantly offset by the relative brevity of Arce's segregation which was 12 days shorter than the 30 day segregation in *Sandin.*"); *Alvarado*, 152 F.Supp.2d at 355. Plaintiff's procedural due process claim must therefore be dismissed.

## VI. Qualified Immunity

Defendants asserts that the doctrine of qualified immunity protects them from liability under 42 U.S.C. § 1983 for Baskerville's claims of deliberate indifference to his medical needs, retaliation, denial of access to the courts, and denial of procedural due process, because he has not alleged facts showing that defendants knew or should have known that their treatment would violate plaintiff's constitutional rights. The doctrine of qualified immunity protects state actors sued in their individual capacity from suit for monetary damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A state actor is qualifiedly immune if either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir.2001).

### A. Inadequate Medical Care Claim

The threshold question in a qualified immunity inquiry is whether the facts alleged, construed in the light most favorably to the plaintiff, "show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). It was clearly established by August 2000—the date of the events alleged in the complaint—that prison officials may not be deliberately indifferent to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Plaintiff's allegations that defendant Diaz was deliberately indifferent to his medical needs raise sufficient issues of facts concerning the objective reasonableness of her actions to preclude qualified immunity at this stage of the litigation. Accordingly, the motion to dismiss the complaint with respect to defendant Diaz is denied.[7]

### B. Retaliation

With respect to plaintiff's claim of retaliation, the Court finds that defendants Blot, Carabello and Holder do not enjoy

---

**7.** As Baskerville has failed to allege facts sufficient to show that Williams' failure to obtain his prescribed medication amounted to deliberate indifference to his medical needs, (*see, supra*, pp. 17–18), the claim against Williams is dismissed and thus the Court need not reach the issue of whether she is entitled to qualified immunity. Similarly, because plaintiff's access to court claim is dismissed for his failure to exhaust his administrative remedies, and his allegations regarding his procedural due process claim based on his pre-hearing treatment was dismissed for failure to state a claim upon which relief can be granted, the Court need not reach the issue of qualified immunity for those claims.

qualified immunity. The constitutional right of an inmate to seek a remedy for his grievances without suffering retaliation was well-established at the time the alleged violations occurred. *See Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988). In asserting this claim, plaintiff alleges intentional conduct by defendants in response to his protected conduct. Assuming this factual scenario, the Court cannot conclude that defendants have sufficiently established that their conduct was objectively reasonable. Defendants' assertion of qualified immunity with respect to plaintiff's retaliation claim cannot be sustained.

## VII. Eleventh Amendment

■ This Court lacks subject matter jurisdiction over plaintiff's claims for damages against defendants to the extent he seeks to sue them in their official capacities. The Eleventh Amendment bars from federal court suits brought by a private party against a state, unless the state has consented to suit or Congress has expressly abrogated the state's immunity.[8] *See Board of Trustees v. Garrett,* 531 U.S. 356, 363–64, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Ford Motor Co. v. Department of the Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). This immunity extends to state officials who are acting on behalf of the state where the state is the "real, substantial party in interest." *Huang v. Johnson,* 251 F.3d 65, 69–70 (2d Cir.2001). It is well-settled, however, that the Eleventh Amendment does not bar suits against state officials in their individual capacities. *Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993).

Defendants contend that to the extent Baskerville seeks to bring suit against them in their official capacity, the claims must be dismissed. (Def. Mem. at 30.) The Court agrees. *See Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). However, as noted by defendants, plaintiff fails to specify whether his claims are asserted against them in their official or individual capacities. This deficiency on plaintiff's part does not warrant an outright dismissal of his claims at this pleading stage. *See Gan,* 996 F.2d at 529–30; *Evering v. Rielly,* No. 98 Civ. 6718, 2001 WL 1150318, at *12 (S.D.N.Y. Sept. 28, 2001); *Pritchett v. Artuz,* No. 99 Civ. 3057, 2000 WL 4157, at *4–5 (S.D.N.Y. Jan. 3, 2000). The Court must liberally construe plaintiff's complaint, particularly as he is alleging civil rights violations. *See Evering,* 2001 WL 1150318 at *12; *George v. Lorenzo,* No. 98 Civ. 0769, 1999 WL 397473, at *1–2 (S.D.N.Y. June 15, 1999).

When Baskerville's complaint is liberally read, the Court can infer that plaintiff intended to assert his claims against defendants in their individual capacities. *See Romer v. Morgenthau,* 119 F.Supp.2d 346, 353 (S.D.N.Y.2000); *George,* 1999 WL 397473, at *2. In fact, at no point does he allege that he is indeed suing defendants in their official capacity. Accordingly, the Court finds that plaintiff may proceed with this action against defendants in their individual capacities, except to the extent it is otherwise dismissed in this Opinion & Order.

---

**8.** The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is granted as to Baskerville's claim of denial of access to court, his claim against Nurse Williams for inadequate medical care, and his claim that he was denied procedural due process. The motion is denied as to plaintiff's claims of excessive force and retaliation and his claim against Nurse Diaz for inadequate medical care.

SO ORDERED.