**Rakim PAULIN, Plaintiff,**

v.

**P.O. Thomas FIGLIA, in his official and individual capacity, of the City of Beacon Police Department, P.O. Joseph Conti, in his official and individual capacity, of the City of Beacon Police Department, Sergeant Gary Fredericks, in his official and individual capacity, of the City of Beacon Police Department, Defendants.**

**No. 11 CV 9634 VB.**

United States District Court, S.D. New York.

Jan. 10, 2013.

---

Rakim Paulin, Elmira, NY, pro se.

Carly Susanne Grant, Lance H. Klein, Keane & Beane, P.C., White Plains, NY, for Defendant.

## MEMORANDUM DECISION

BRICCETTI, District Judge.

Plaintiff Rakim Paulin, proceeding *pro se*, brings various Section 1983 claims alleging violations of his constitutional rights, arising from an arrest and subsequent events that occurred on January 9, 2009.

Specifically, plaintiff alleges (1) City of Beacon police officers Joseph Conti and Thomas Figlia falsely arrested plaintiff; (2) Conti and Figlia used excessive force in effecting plaintiff's arrest; (3) Figlia used excessive force after plaintiff's arrest; (4) Figlia unreasonably strip searched plaintiff, without probable cause, during intake at the Beacon Police Department; (5) Figlia and Sergeant Gary Fredericks denied plaintiff medical care after his arrest; (6) Conti, Figlia, and Fredericks maliciously prosecuted plaintiff; (7) Fredericks is subject to supervisory liability for Conti's and Figlia's conduct; and (8) Conti, Figlia, and Fredericks engaged in a criminal conspiracy, under 18 U.S.C. §§ 241–42.

Defendants move to dismiss all claims in plaintiff's amended complaint, except his excessive force claims against Figlia. (Doc. # 19).

Defendants' motion is GRANTED in part and DENIED in part.

The Court has jurisdiction under 28 U.S.C. § 1331.

### BACKGROUND

For purposes of ruling on the motion to dismiss, the Court accepts all well-pleaded allegations of the amended complaint as true. The Court does not consider the arrest report of January 9, 2009, on a

motion to dismiss because plaintiff did not rely on it in preparing the amended complaint. *See Chambers v. Time Warner,* 282 F.3d 147, 152–53 & n. 3 (2d Cir.2002).

According to the amended complaint, on January 9, 2009, at approximately 1000 a.m., Figlia and Conti stopped a vehicle being driven by Kimberly Lent. Plaintiff had been asleep in the rear seat of Lent's vehicle, and woke up at some point during the stop. Once plaintiff observed the officers arresting Lent, he "exited the vehicle and began to walk away."

Figlia pursued plaintiff, without saying anything, and knocked him to the ground. There, Figlia "immediately jumped on plaintiff's back, and began to beat the plaintiff about the ribs, head and back multiple times," while Conti held plaintiff's legs. After the officers secured plaintiff in handcuffs, plaintiff asserts Conti "punched [him] in the ribs and back several times" while Figlia twice "banged plaintiff's head on the [sidewalk curb,] ... scraped it along the ground," and placed plaintiff in an arm-choke hold until plaintiff lost consciousness.

Once plaintiff came to, the officers placed him in Figlia's squad car and departed for the Beacon police station. During the trip, plaintiff requested medical attention from Figlia "due to being beat[en], manhandled, daze[d], and confused." Figlia told plaintiff to "shut the fuck-up" and continued driving. Upon arriving at the station, plaintiff again requested medical attention from Figlia and other officers, including Fredericks, whom plaintiff "recognized" as the shift supervisor. After plaintiff told Fredericks about the pain in his ribs, back, and head, Fredericks "observed" plaintiff's external injuries and told him medical care would be provided at the Dutchess County Jail.

A short time later, Figlia escorted plaintiff to a holding cell. There, plaintiff alleges Figlia "punched [him] in the face and threatened [him] not to ask for any medical attention." Figlia then commenced a strip search of plaintiff, directing him to "bend over so [Figlia] could view the inside of plaintiff's rectum." After the search, Figlia instructed plaintiff to remain quiet and lay down on a bench in the holding cell. Soon after, plaintiff " 'threw up' and began to experience dizziness coupled with severe pain and disorientation." He sought medical attention from "various other officers," but they either denied his requests or told him he would receive care at the Dutchess County Jail.

Plaintiff was transferred to the jail approximately ten hours later. A nurse assessed his injuries, gave him "pain medication, [an] ice pack, bandaids, and A & D ointment," and scheduled plaintiff to see a doctor at the facility. After various tests, plaintiff avers the incident left him with a permanent back injury, a permanent lump on his head, chronic headaches, and periods of dizziness. For these symptoms, plaintiff takes ibuprofen, cyclobenzaprine, and meclizine daily.[1]

Plaintiff was subsequently charged with obstruction of governmental administration, criminal impersonation, and resisting arrest. On April 9, 2009, all charges were dismissed in the interest of justice.

---

1. Cyclobenzaprine hydrochloride is a skeletal muscle relaxant. *Physician's Desk Reference,* 2011 PDR 1481–0045 (updated August 2011). "Meclizine 'is effective in the management of nausea, vomiting and dizziness associated with motion sickness.' " *Sellers v. Barnhart,* 246 F.Supp.2d 1201, 1208 (M.D.Ala.2002)

(quoting *Physician's Desk Reference* 2361 (53d ed.1999)). The Court takes judicial notice of the nature of these prescription medications. *See* Fed.R.Evid. 201; *see, e.g., Ariola v. Onondaga County Sheriff's Dep't,* 2007 WL 119453, at *7 n. 61 (N.D.N.Y. Jan. 10, 2007).

On December 15, 2011, plaintiff filed a complaint against Figlia, Fredericks, and a "John Doe" defendant. After the Court ordered the City of Beacon to identify the "John Doe" defendant, plaintiff amended his complaint to name Conti instead of "John Doe."

## DISCUSSION

### I. Standard of Review

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (internal quotation marks omitted). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the sufficiency of the amended complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal. See* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678, 129 S.Ct. 1937; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir.2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the amended complaint must meet a standard of "plausibility." *Id.* at 678, 129 S.Ct. 1937; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

The Court liberally construes submissions of a *pro se* litigant and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006) (per curiam) (internal quotation marks omitted). Additionally, the Court applies the pleading rules permissively when a *pro se* plaintiff alleges civil rights violations. *See Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir.2008).

### II. Fourth Amendment Claims

#### A. False Arrest

To state a claim for false arrest, plaintiff must allege the defendants "intentionally confined [plaintiff] without his consent and without justification." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)). Probable cause to arrest "is a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994) (citing *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 45 (2d Cir.1985)). Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.2006) (internal quotation marks omitted). A court examines the

information available to the officer "at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir.1996). Eventual dismissal of the charges does not affect whether there was probable cause at the time of arrest. *Davis v. Ventimiglia*, 2009 WL 4910047, at *4, 2009 U.S. Dist. LEXIS 118753, at *13 (S.D.N.Y. Dec. 21, 2009).[2]

■ Officers Figlia and Conti contend they acquired probable cause to stop the car driven by Lent when they observed her committing a traffic offense, and plaintiff does not disagree. *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (citations omitted); *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir.1994). Probable cause to stop the vehicle provided the officers with corresponding authority to stop and question Lent and any of her passengers. *See Hiibel v. Sixth Jud. Dist. Court of Nev., Humboldt County*, 542 U.S. 177, 186, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) (discussing police authority to briefly detain a suspect to determine his identity and question him for additional information); *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (authorizing law enforcement to "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop"); *see also Brendlin v. California*, 551 U.S. 249, 251, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (noting the Fourth Amendment does not distinguish between a vehicle's driver and passenger).

■ Plaintiff states he woke up, observed Officer Figlia arresting Lent, "then exited the vehicle and began to walk away

due to Ms. Lent's arrest." Once plaintiff got out of the car and left the scene, police had probable cause to arrest him for obstructing governmental administration under N.Y. Penal Law § 195.05. *See People v. Howard*, 50 N.Y.2d 583, 592, 430 N.Y.S.2d 578, 408 N.E.2d 908 (1980) (noting flight plus indicia of criminal activity, such as another arrest, may create probable cause under Section 195.05); *see also United States v. Moreno*, 701 F.3d 64, 74–75 (2d Cir.2012) (collecting cases noting flight from officers may create probable cause); *Russell v. Eighty Fourth Precinct*, 2004 WL 2504646, at *3, 2004 U.S. Dist. LEXIS 22546, at *9 (E.D.N.Y. Nov. 8, 2004) (walking away from crime scene, among other things, creates "at least the appearance of flight"). "The officer was not required to make a full investigation into plaintiff's state of mind prior to taking action. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997) (citing *Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

Accordingly, plaintiff's false arrest claim must be dismissed.

B. *Excessive Force*

Figlia does not move to dismiss plaintiff's claims that he used excessive force during and after plaintiff's arrest. Conti does not argue the force plaintiff alleges he used was appropriate, but rather contends the claim against him is barred by the statute of limitations.[3] Specifically,

---

**2.** Copies of unreported cases cited herein will be mailed to petitioner. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir.2009).

**3.** Although this analysis applies to all claims against Conti, it particularly applies to the excessive force claim because the Court finds plaintiff has failed to state a claim against

Conti argues plaintiff's amended complaint of April 5, 2012, which named him as a defendant in place of "John Doe," does not relate back to the timely filed complaint of December 15, 2011, because plaintiff is at fault for not naming Conti earlier. *See Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999).

The Court previously considered and rejected this argument in its Order dated March 20, 2012, when the City of Beacon objected to the Court's Order of Service dated January 30, 2012. As more fully described therein, the Court has a duty to allow plaintiff a fair opportunity to establish the merits of his claims. *Thomas v. Arevalo,* 1998 WL 427623, at *16, 1998 U.S. Dist. LEXIS 11588, at *51–52 (S.D.N.Y. July 27, 1998). Thus, "viewed in the light most favorable to plaintiff, the Court finds plaintiff's amended complaint, substituting a named defendant for the John Doe defendant, will relate back to the date of the original complaint, which was timely filed." (Order dated Mar. 20, 2012, at 3.)

### C. *Strip Search*

■ In the amended complaint, plaintiff contends Figlia violated his Fourth Amendment right subjecting him to a strip search without probable cause. The Fourth Amendment prohibits searches considered unreasonable based on the "scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In the context of detention by law enforcement, "a regula-

tion impinging on [a prisoner's] constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Florence v. Bd. of Chosen Freeholders,·* —— U.S. ——, 132 S.Ct. 1510, 1515, 182 L.Ed.2d 566 (2012) (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). In determining the reasonableness of a search, the Supreme Court has emphasized the high degree of deference owed to law enforcement, because "determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials.'" *Id.* at 1517 (quoting *Bell v. Wolfish,* 441 U.S. at 548, 99 S.Ct. 1861).

In *Florence v. Board of Chosen Freeholders,* the Supreme Court upheld the suspicionless strip search[4] of a detainee suspected of committing a minor offense when the search was conducted as part of the prison intake process, prior to his introduction into the general jail population. *Id.* at 1518. The Court explained that correctional officials have broad license to devise reasonable search policies to inspect detainees for possible injuries and gang affiliations, prevent contraband from entering the jail, and ensure the safety of officers and prisoners. *Id.* at 1512. The Court did not distinguish a search based on the type of facility in which it was conducted or whether a future search was planned, because smuggling of dangerous contraband "could happen any time detainees are held in the same area, including . . . in the holding cell of the jail." *Id.* at 1521. Rather, it "repeated the admonition that, 'in the absence of substantial evidence in the record to indicate that the

---

Conti for false arrest and malicious prosecution.

**4.** The Court noted a "strip search" can take many forms, including requiring a prisoner to

disrobe, lift his genitals, and separate his buttocks to reveal his anus. *Florence v. Bd. of Chosen Freeholders,* 132 S.Ct. at 1515.

officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters.' " *Id.* at 1517 (quoting *Block v. Rutherford,* 468 U.S. 576, 584–85, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984)).

Here, plaintiff alleges Figlia violated his Fourth Amendment rights by conducting a strip search at the Beacon police station, without probable cause and with knowledge plaintiff would be strip searched again upon entering Dutchess County Jail. *Florence* makes clear Figlia did not need probable cause to effect such a search of plaintiff before placing him in the holding cell, and Figlia's conduct was reasonable even if he knew plaintiff would be searched again at Dutchess County Jail. *See, e.g., Israel v. City of N.Y.,* 2012 WL 4762082, at *2–4, 2012 U.S. Dist. LEXIS 144712, at *6–11 (S.D.N.Y. Oct. 5, 2012); *Myers v. City of N.Y.,* 2012 WL 3776707, at *9, 2012 U.S. Dist. LEXIS 123994, at *27–28 (S.D.N.Y. Aug. 29, 2012). Plaintiff's claim is therefore dismissed.

### D. *Malicious Prosecution*

To prevail on a claim for malicious prosecution under Section 1983, "a plaintiff must show a Fourth Amendment violation and establish the elements of a malicious prosecution claim under state law." *Roberts v. Babkiewicz,* 582 F.3d 418, 420 (2d Cir.2009) (internal quotation marks omitted). To state a viable claim for malicious prosecution under New York law, plaintiff must show (1) initiation and continuation of criminal process against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause; and (4) actual malice as a motivation for defendants' actions. *Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir.2003) (citing *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997)).

According to the Second Circuit, a dismissal "in the interest of justice" under New York Criminal Procedure Law § 170.40 does not qualify as a termination in plaintiff's favor for purposes of stating a claim for malicious prosecution. *See Lynch v. Suffolk County Police Dep't, Inc.,* 348 Fed.Appx. 672, 674 (2d Cir.2009) (citing *Hygh v. Jacobs,* 961 F.2d 359, 367–68 (2d Cir.1992)). Because plaintiff's criminal case was so dismissed, his malicious prosecution claim must be dismissed.

### III. *Denial of Medical Care*

Although a pre-trial detainee's right to be free from cruel and unusual punishment is rooted in the Fourteenth Amendment's protection of due process, Eighth Amendment analysis governs the merits of such a claim. See *Weyant v. Okst,* 101 F.3d at 856 (citing *Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)); *see also* U.S. Const. amend. VIII (prohibiting "cruel and unusual punishments").

To plead a claim for denial of medical treatment under the Eighth Amendment a plaintiff must allege "deliberate indifference to serious medical needs [which] constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This requires plaintiff to plead "two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000).

To satisfy the subjective test, a plaintiff must plead that the defendant had a mental state akin to recklessness, which "requires that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006) (citing *Farmer*

*v. Brennan,* 511 U.S. 825, 836–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). This obligates plaintiff to allege "something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. at 835, 114 S.Ct. 1970.

▮▮▮▮ Plaintiff must plead two sub-components to satisfy the objective test. *Salahuddin v. Goord,* 467 F.3d at 279–80. First, plaintiff must allege he was actually deprived of adequate care, meaning the prison official acted unreasonably when faced with a prisoner's health risk. *Id.* Second, if plaintiff says no care was provided, he must allege his condition was "sufficiently serious" such that it caused or will likely cause "death, degeneration, or extreme pain." *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005); *see Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (finding only "deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation" (internal quotation marks omitted)). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin v. Goord,* 467 F.3d at 280 (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)). If plaintiff claims "the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay ... rather than the prisoner's underlying medical

condition alone.'" *Id.* (quoting *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir. 2003)).

▮▮▮▮ Plaintiff alleges he requested medical attention three times. First, when secured in Figlia's police car, he sought treatment from Figlia for being "beat[en], manhandled, daze[d], and confused." Second, upon arriving at the station, he asked Fredericks for treatment for pain in his "ribs, back, and head areas." Third, after lying down in the holding cell, plaintiff asked "various officers" for treatment for "dizziness, coupled with severe pain and disorientation." Plaintiff alleges Figlia ignored his first request and discouraged him from making future requests, and Fredericks and other officers responded to plaintiff's second and third requests by telling plaintiff he would receive care at the Dutchess County Jail.[5] Plaintiff does not allege the care he eventually received at the jail was inadequate, only that it should have been provided sooner. The Court's inquiry thus centers on the time between plaintiff's first request for medical treatment and when it ultimately was administered.

Plaintiff's amended complaint satisfies the subjective test with respect to Figlia and Fredericks. Plaintiff states Figlia responded to his first request for care by telling him to "shut the fuck-up," and later punched plaintiff in the face after telling him to stop requesting treatment. Taken as true, this is enough to show Figlia was deliberately indifferent. Plaintiff also states Fredericks "observed the external injuries of plaintiff," heard plaintiff talk about his pain, and told plaintiff care would be administered at the Dutchess County Jail. Plaintiff also states his symp-

---

**5.** Plaintiff does not allege he asked Conti for medical care, or that Conti participated in

such care being denied.

toms worsened, and he felt severe pain, as he waited ten hours for treatment. These allegations, taken as true, plausibly state Fredericks was aware of a substantial risk of harm to plaintiff, even if he did not intend such harm to occur. *See Salahuddin v. Goord,* 467 F.3d at 280 (citing *Farmer v. Brennan,* 511 U.S. at 835, 114 S.Ct. 1970). Defendants' reliance on *Sonds v. St. Barnabas Hospital Correctional Health Services,* 151 F.Supp.2d 303 (S.D.N.Y.2001), where the court, in dicta, found plaintiff's broken finger and three-plus hour wait for treatment were insufficient to state a claim for deliberate indifference, does not persuade the Court otherwise.

At this stage, plaintiff's allegations also meet his burden under the objective test to show he was deprived of adequate care and his injuries were sufficiently serious. As a threshold matter, numerous courts have found allegations of back pain and permanent back injury sufficient to state a claim under the Eighth Amendment. *See, e.g., Shepherd v. Powers,* 2012 WL 4477241, at *5-6, 2012 U.S. Dist. LEXIS 141179, at *19 (S.D.N.Y. Sept. 27, 2012); *Nelson v. Rodas,* 2002 WL 31075804, at *14 n. 24, 2002 U.S. Dist. LEXIS 17359, at *50 n. 24 (S.D.N.Y. Sept. 17, 2002) (Rep. & Rec. adopted by Order dated Mar. 12, 2004) (collecting cases finding severe back pain sufficient to state a claim). Plaintiff states he endured such injury, experienced pain as a result, and did not receive treatment for ten hours. Plus, plaintiff states he felt severe pain when he was in the holding cell, and it could be inferred that he felt severe pain earlier based on his prior requests for care. *See Cole v. Artuz,* 2000 WL 760749, at *5, 2000 U.S. Dist. LEXIS 8117, at *14 (S.D.N.Y. June 12, 2000) ("[T]he level of pain experienced by [plaintiff] must be viewed in the light most favorable to [him] on a 12(b)(6) motion.") Additionally, plaintiff's eventual treatment—which included first aid, referral to a doctor, various medical imaging tests, and prescription medications—bolsters his claim of inadequate care at the police department. *See Baskerville v. Blot,* 224 F.Supp.2d 723, 734 (S.D.N.Y.2002). Although plaintiff does not allege the delay in receiving treatment exacerbated his injuries, failure to do so is not fatal to his claim at this stage. *See Chance v. Armstrong,* 143 F.3d at 702.

Accordingly, plaintiff's allegations state a Fourteenth Amendment claim for deliberate indifference against Figlia and Fredericks. *See Weyant v. Okst,* 101 F.3d at 856 (citing *Revere v. Mass. Gen. Hosp.,* 463 U.S. at 244, 103 S.Ct. 2979) (pre-trial detainee's rights protected by the Due Process Clause, not the Eighth Amendment). Whether they will ultimately survive a motion for summary judgment is another matter. *See, e.g., Chance v. Armstrong,* 143 F.3d at 703–04; *Gaudreault v. Salem,* 923 F.2d 203, 208–09 (1st Cir.1990) (affirming summary judgment where plaintiff provided no evidence that a ten-hour delay in treatment exacerbated his injuries).

### IV. *Plaintiff's Remaining Claims*

#### A. *Criminal Conspiracy*

Plaintiff concedes his claims for criminal conspiracy warrant dismissal because there is no private right of action under either 18 U.S.C. § 241 or 18 U.S.C. § 242. *See Dugar v. Coughlin,* 613 F.Supp. 849, 852 n. 1 (S.D.N.Y.1985). Those claims are therefore dismissed.

#### B. *Supervisory Liability*

Plaintiff's claims of excessive force against Figlia and Conti, and deliberate indifference against Figlia, are the only claims for which Fredericks could potentially incur liability as their supervisor.

To plead supervisory liability under Section 1983, a plaintiff must allege facts showing "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).

▋ Plaintiff's amended complaint alleges he "recognized [Fredericks] as being the immediate supervisor," and Fredericks "knew of the violations, failed to remedy them, and was grossly negligent in adequately supervising defendants." In his opposition, plaintiff also states a supervisor could incur liability based on actual knowledge of a subordinate's violations, willful blindness to a subordinate's violations, or grossly negligent supervision of a subordinate.

Plaintiff does not augment his pleading or argument with facts indicating Fredericks knew of either Figlia's or Conti's alleged use of excessive force, or supporting supervisory liability under another theory. As a result, his conclusory statements of Fredericks' position of authority, without facts to support them, are insufficient to attach supervisory liability. *See Morgan v. County of Nassau,* 720 F.Supp.2d 229, 235 (E.D.N.Y.2010). Plaintiff's statements in his opposition alleging a custom of grossly negligent supervision and failure to stop unconstitutional acts from occurring are similarly inadequate to state a claim. *See Batista v. City of N.Y.,* 2007 WL 2822211, at *4, 2007 U.S. Dist. LEXIS 71905, at *14 (S.D.N.Y. Sept. 25, 2007)

("The mere assertion that there exists such a policy or custom, absent specific allegations of fact tending to support such an inference, is insufficient.").

In contrast, plaintiff does allege Fredericks directly participated in denying plaintiff medical care and failed to remedy the denial of care by Figlia and other officers.

Accordingly, plaintiff has stated a supervisory liability claim against Fredericks for deliberate indifference, but not for excessive force.

### C. Qualified Immunity

▋ Qualified immunity is immunity from suit rather than a defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The doctrine insulates government officials from liability in suits against them in their individual capacity when their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see Hafer v. Melo,* 502 U.S. 21, 25–26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). For a right to be "clearly established," it must be clear enough that the official could have reasonably believed that his actions were unlawful. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[I]n the light of pre-existing law the unlawfulness must be apparent."). The standard " 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Figlia and Fredericks argue they are entitled to qualified immunity on plaintiff's

deliberate indifference claim.[6] Given the allegations in plaintiff's amended complaint, which the Court takes as true here, additional facts are required to determine whether a reasonable officer could have believed defendants were acting reasonably. *See Messina v. Mazzeo,* 854 F.Supp. 116, 143–44 (E.D.N.Y.1994); *see also Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts."). Dismissing plaintiff's claim at this time based on qualified immunity is therefore inappropriate.

### D. *Request for Pro Bono Counsel*

 Plaintiff renews his request for appointment of pro bono counsel, arguing his incarceration limits his ability to engage in discovery and counsel is necessary to cross examine defendants. Applying the factors of *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986), plaintiff's case does not appear to involve complex legal issues or require a lengthy factual investigation. *Id.* at 60. Further, the Court still believes a trial in this case would be relatively straightforward and would turn in large part on the trier of fact's estimation of plaintiff's and the officers' credibility. Thus, the Court again denies plaintiff's request (*see* Doc. # 15).

### CONCLUSION

Defendants' motion to dismiss is GRANTED in part and DENIED in part.

The causes of action that survive the motion to dismiss are for excessive force

against Figlia and Conti, deliberate indifference against Figlia and Fredericks, and supervisory liability against Fredericks on the deliberate indifference claim. Because the Court finds that an opportunity to replead would be futile, plaintiff's other claims are dismissed with prejudice. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

The Clerk is instructed to terminate the motion (Doc. # 19).

SO ORDERED.

---

**6.** No defendant argues at this stage that qualified immunity bars plaintiff's excessive force