NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0009n.06

Case No. 16-2057

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 05, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSEPH ALEXANDER PECSI, IV, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CITY OF NILES, MICHIGAN, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, SUTTON, and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge. Ivery Cross, a police officer in Niles, Michigan, arrested Joseph Pecsi for possession of marijuana. Cross took Pecsi to the police station, strip searched him, and placed him in a holding cell. Over the next few hours, Cross twice removed Pecsi from his cell and sexually abused him. After Pecsi reported the incident, the Niles Police Department fired Cross, who eventually pleaded guilty to criminal sexual conduct. No one in today's case doubts that Cross wronged Pecsi, badly. The question is whether the City of Niles bears legal responsibility for Cross's actions. Because the district court correctly rejected this claim, we affirm.

On March 17, 2011, Cross pulled Pecsi over and found marijuana in his car. Cross arrested Pecsi, took him to the police station's lockup, and strip searched him before placing him

in a holding cell by himself. Cross later removed Pecsi from the cell and walked him to a nearby bathroom, where he forced him to masturbate into a toilet, ostensibly for a drug test. Cross returned Pecsi to the cell but came back about 10 minutes later and forced Pecsi to masturbate in the bathroom again, now into a cup. This time, Cross attempted to grab Pecsi's genitals. Pecsi was released from the lockup later that day.

Pecsi reported the incident. The Department suspended Cross and began an investigation on March 28. It terminated him on March 30. According to the City, Cross is currently serving a prison term for criminal sexual conduct.

In March 2014, Pecsi filed this § 1983 action against Cross, the City, and former Police Chief Richard Huff. Pecsi alleged that Cross violated his Fourth and Fourteenth Amendment rights by sexually abusing him, and that the City and Huff were liable for the abuse because they failed to supervise Cross, who had a history of reckless behavior. The district court entered a default judgment in favor of Pecsi and against Cross for $2,613,672. In response to the City's motion for summary judgment, Pecsi argued for the first time that the City's strip-search policy was unconstitutional. The district court granted the City summary judgment on all claims. In doing so, however, it did not directly resolve Pecsi's challenge to the City's strip-search policy.

Pecsi appealed, seeking relief on his strip-search and failure-to-supervise claims.

*Strip Search Policy.* We must consider as an initial matter whether Pecsi's strip-search claim is properly before us. Appellate courts generally do not consider issues that the district court did not evaluate because it would be unfair to resolve a question without giving the parties an opportunity to present their evidence and arguments. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976). But in this instance the parties developed a record on the strip-search policy during

2

discovery and have fully briefed the issue twice. Neither party identifies any prejudice that would result from reviewing the issue now. We see no reason to delay resolution of this claim.

Pecsi maintains that the police searched him in connection with an unconstitutional policy of strip searching *every* drug arrestee without regard to whether the police had reasonable suspicion that the arrestee possessed drugs or other contraband. Even if this were the City's policy, it's not obvious that it would be unconstitutional. The Supreme Court held in *Florence v. Board of Chosen Freeholders* that the Fourth Amendment permits suspicionless strip searches of individuals about to enter the general population of a detention facility. 132 S. Ct. 1510, 1513–14 (2012). And lower courts have split over whether the holding applies to police station lockups. *Compare Paulin v. Figlia*, 916 F. Supp. 2d 524, 533 (S.D.N.Y. 2013) (it does), *with Fate v. Charles*, 24 F. Supp. 3d 337, 349 (S.D.N.Y. 2014) (it does not). It's also unclear whether there is necessarily a reasonable suspicion to strip search a person arrested for a drug offense. *See Jacobson v. McCormick*, 763 F.3d 914, 917–18 (8th Cir. 2014).

Be all that as it may, we need not reach these questions. The dispositive reality is that the City did not have a blanket strip-search policy for drug arrestees. Three Niles Police Department officers testified, all without contradiction, that an officer may conduct a strip search only if he thinks an arrestee brought contraband into the police station. Accordingly, even if we assume for the sake of argument that a reasonable-suspicion standard applies to strip searches of drug arrestees at police station lockups, the City's policy meets it.

Pecsi demurs. In arguing that the City had an across-the-board strip-search policy for all drug arrestees, he relies on a remark by Cross. "If you arrest someone for drugs," Cross said, "that is a basic practice." R. 113 at 9. But the statement is taken out of context. On cross-examination, Cross clarified his understanding that a strip search was justified only if an

individual "is arrested for drugs *and* they are suspected of still hiding something." R. 92-1 at 37 (emphasis added). In this case, Cross suspected that Pecsi still possessed some marijuana because he admitted to smoking recently and made nervous, "jumpy" movements. *Id.* at 24, 37–38. Absent those suspicious movements, Cross added, he would not have strip searched Pecsi. Whether or not these observations sufficed to create reasonable suspicion, Cross understood that the City did not permit officers to strip search all drug arrestees without an independent reason to think they still possessed contraband. The claim fails on this record.

*Failure to Supervise.* The next question is this: Is the City responsible for the allegedly illegal strip search and the sexual abuse Pecsi suffered because it failed to supervise Cross adequately? To succeed on a failure-to-supervise theory, a plaintiff must prove that the City's flawed supervision was the "moving force" behind the unconstitutional conduct, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), and that the City was deliberately indifferent to the "known or obvious" constitutional violations that would result, *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

In this day and age, those are significant hurdles. And Pecsi failed in particular to clear one of them—the deliberate-indifference requirement. In Pecsi's eyes, the City showed deliberate indifference merely because it permitted officers to strip search arrestees and remove them from their cells without first getting approval from a supervisor. But the Niles Police Department did not have a pattern of illegal strip searches or sexual assaults by its officers that would have notified them of the need for closer supervision. The duty to supervise is not a duty to micromanage. A municipality does not open itself up to liability every time it delegates power to employees. The City, true enough, gave Cross the "opportunity" to abuse Pecsi by empowering Cross to strip search him and remove him from his cell, but "opportunity alone,

4

without reason to suspect that it will lead to a constitutional violation, does not establish deliberate indifference." *Mize v. Tedford*, 375 F. App'x 497, 501 (6th Cir. 2010). To hold otherwise would create the "*de facto respondeat superior* liability" that the Supreme Court has assiduously avoided imposing on city governments under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

It matters not whether the City complied with a Michigan statute requiring officers to prepare a written report of every strip search. *See* Mich. Comp. Laws § 764.25a(4). It's not clear how requiring officers to write such reports would have changed Cross's behavior, as someone of his ilk surely would have described only that there was a strip search (and why), not exactly what he did on top of that. The issue at any rate is whether the police department's supervision was constitutionally deficient, not whether it satisfied a higher standard created by state law. *Boswell v. Mayer*, 169 F.3d 384, 390 (6th Cir. 1999).

Pecsi adds that the City was deliberately indifferent to the risk posed by Cross, who had a record of reckless conduct. But none of Cross's actions put the City on notice that he had the propensity to commit sexual assault. Three of the four incidents identified by Pecsi—passing bad checks, speeding and driving on a suspended license, and lying to a superior officer—had nothing to do with this kind of incident. They were nonviolent and did not raise the possibility that Cross might commit a far more serious crime. Chief Huff investigated each incident and disciplined Cross as appropriate.

The more relevant incident is Cross's alleged assault of another arrestee, Russell Frantz. But this allegation did not put the City on notice of the danger Cross posed to arrestees because the City never substantiated the allegation, and it never reached Chief Huff. Frantz claimed that Cross repeatedly punched him in his hospital room, where he had been taken after his arrest,

5

when he refused to let a nurse catheterize him for a urine sample. Cross, for his part, claims that he merely restrained Frantz, who was belligerent and (as Frantz admits) severely intoxicated, while a nurse inserted a catheter. On the day the hospital released Frantz, he went to the Niles Police Department on three occasions but never filed a complaint against Cross. The first time, Frantz told someone working in the dispatch area that he wished to file a complaint but then left without doing so. Frantz later returned and filed a Freedom of Information Act request for his police records, and then returned a final time to retrieve his bicycle, which was impounded at the station. On this last visit, Frantz claims he told an officer that Cross had "raped" him by holding him down during the catheterization. R. 92-13 at 23. Frantz never contacted the Department again, and Chief Huff heard about the incident only after the Pecsi litigation began. The City did not show deliberate indifference by failing to respond to a dubious allegation, one that the alleged victim quickly dropped and that the chief disciplinary officer never learned anything about.

For these reasons, we affirm.