**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0179n.06

No. 18-5365

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 05, 2019
DEBORAH S. HUNT, Clerk

RICHARD L. CLEMONS,　　　　　　　　　　)
　　　　Plaintiff-Appellee,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)　　ON APPEAL FROM THE UNITED
　　　　v.　　　　　　　　　　　　　　　　)　　STATES DISTRICT COURT FOR
　　　　　　　　　　　　　　　　　　　　　)　　THE　EASTERN　DISTRICT　OF
JOHN COUCH,　　　　　　　　　　　　　)　　KENTUCKY
　　　　Defendant-Appellant.　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)　　　　　　　　OPINION
　　　　　　　　　　　　　　　　　　　　　)

BEFORE:　CLAY and STRANCH, Circuit Judges; PEARSON, District Judge.[*]

**JANE B. STRANCH, Circuit Judge.** Defendant Trooper John Couch of the Kentucky State Police brings this interlocutory appeal from the district court's denial of summary judgment in an action brought by plaintiff Richard Clemons under 42 U.S.C. § 1983 and state law. On appeal, Couch challenges the district court's denial of qualified immunity for Clemons's federal and state law claims. Because no questions of law are implicated as to the federal claims or the state law allegation of malicious prosecution, we **DISMISS** the appeal in relevant part for lack of jurisdiction. We **AFFIRM** the denial of qualified official immunity for the remaining state law claims.

## I.　BACKGROUND

Clemons and his wife Evalee live in Hazard, Kentucky. In December 2015 or January 2016, their son Richard Dustin Clemons (Dustin), his then-wife Christina, and Dustin and

---

[*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

Christina's child moved into Clemons and Evalee's home after Dustin's house was damaged by fire. Within a few months, Dustin and Christina separated, and Christina moved out of the Clemonses's residence. On March 27, 2016, Christina went to a Kentucky State Police station and requested that a police officer escort her while she retrieved personal belongings from the residence because she was afraid to return alone. Couch agreed to accompany Christina and her mother.

When Couch, Christina, and her mother arrived at the residence, Clemons, Evalee, and Dustin were all at home. As Christina gathered the items in another room and her mother went to the garage, Couch stood in the residence's living room and directed Clemons several times to "sit down and shut up." Clemons told Couch and Christina to leave his property and cursed at Couch, telling him, "You can't do this." Clemons then called his son-in-law John Napier, a Perry County sheriff's deputy, who was on his regular patrol and soon arrived at the house with another deputy. The parties generally agree on this series of events, though they disagree about the extent of Clemons's hostility toward Couch.

The parties' and witnesses' accounts of the subsequent events diverge. According to Clemons, as Couch and Christina were leaving the house, Clemons walked toward them "at a normal pace" to shut the door behind them. Then, when he was about five feet away from Couch, Clemons told Couch that he "smelled like pig shit," to which Couch responded by punching Clemons near his right eye. Clemons testified that the punch knocked him down to his stomach. While his subsequent memories of the incident are hazy, Clemons recalled being handcuffed and stunned by a Taser and seeing Couch fighting with his son, Dustin. He also remembered that after Couch arrested him and took him outside, the officer "bounced [his] head off the top of the cruiser." A photograph in the record shows Clemons with a black eye and a bruise on his forehead.

Clemons's son, Dustin, and son-in-law, Napier, largely corroborate Clemons's account. For example, in his deposition, Dustin stated that after Clemons said Couch smelled like "pig shit," the officer "threw his hat down" and "took his fist and started beating [Clemons] in his face with it," hitting him "quite a few times" and "as hard as he [could]" after Clemons had fallen to the floor. Dustin said he then punched Couch once or twice and got hit with the Taser shortly thereafter. Napier similarly stated, "Pretty much as soon as [Clemons] got [the 'pig shit' comment] out of his mouth, Trooper Couch wheeled around and punched him and threw his hat off and went after him." In his deposition, Napier described his exchange with Couch after Couch deployed his Taser on Clemons and Dustin:

> . . . I looked at him and said, "That was uncalled for." I was referring to when he punched—when it all started, went downhill. I said, "That was uncalled for." And he said, "You're supposed to be on my side." And I said, "It ain't about sides. You can't hit people just for running their mouth. . . ." I was referring to the punch that started the whole thing. . . . I just thought the whole punch at the beginning and then him coming back and punching my brother-in-law were both unwarranted, just by my experience and my training.

Couch describes the altercation differently. In his police report of the March 27 incident, Couch stated that Clemons had followed Christina as she was leaving, yelling at her, and that Clemons had positioned himself between Couch and the door. At that point, Clemons turned toward Couch in a "combative stance," which made Couch "feel threatened and use[] a two handed body check to clear space from him." Clemons attempted to punch Couch, Couch dodged, and Napier got between them. In his deposition, Couch said that after Clemons swung and missed, Couch performed a second "two-hand check." Couch said he "can't remember hitting [Clemons] with a closed fist at all." He also stated that he did not know whether Clemons had his fists closed, and he "can't remember looking at his hands," despite also noting that he felt threatened because

he "could see [Clemons's] fists clinch just in an aggressive manner . . . like a boxer." He asserted that he did not bounce Clemons's head on the cruiser.

Couch placed Clemons, Dustin, and Evalee under arrest, variously citing them for menacing, disorderly conduct, assault of a police officer, obstruction of governmental operations, and resisting arrest. A grand jury declined to issue any indictments.

Clemons filed a civil rights action against Couch and others under 42 U.S.C. § 1983, alleging violations of federal and state law. The district court granted the defendants' motion to dismiss in part, leaving only the claims against Couch in his individual capacity. Clemons subsequently filed an amended complaint that raised federal claims against Couch for unreasonable search and seizure, false arrest, and excessive force, as well as state law claims for assault, battery, false imprisonment, malicious prosecution, intentional infliction of emotional distress, and three unintentional torts. Couch filed a second motion to dismiss, which the court denied, and then filed a motion for summary judgment.

The district court granted Couch's summary judgment motion in part, ruling that Couch was entitled to qualified immunity for the claim of a Fourth Amendment violation based on warrantless entry of Clemons's residence. Clemons voluntarily withdrew his claims for unintentional torts and intentional infliction of emotional distress. The district court scheduled Clemons's remaining claims for trial, finding disputes of material fact (and thus no federal or state immunity) relating to his claims for false arrest, excessive force, assault, battery, false imprisonment, and malicious prosecution. The denials of qualified immunity for the federal claims and qualified official immunity for the state law claims are the subject of this interlocutory appeal.

## II. ANALYSIS

### A. Qualified Immunity

As an initial matter, we must determine whether we have jurisdiction to consider this interlocutory appeal. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291. . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). But a defendant may not appeal a denial of a motion for summary judgment based on qualified immunity "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 320 (1995); *see also Family Serv. Ass'n ex rel. Coil v. Wells Twp.*, 783 F.3d 600, 607 (6th Cir. 2015) ("*Johnson* applies to interlocutory appeals that solely contest the plaintiff's account of the facts."). "It is well-established that 'a defendant challenging the denial of summary judgment on qualified immunity grounds must be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal.'" *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019) (quoting *Hopper v. Plummer*, 887 F.3d 744, 757 (6th Cir. 2018)). "[W]e may exercise jurisdiction only if a defendant 'raises the purely legal question of whether the facts alleged support a claim of violation of clearly established law.'" *Id.* (quoting *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

We therefore examine the basis of each of Couch's arguments to determine whether we have jurisdiction over this appeal.

#### 1. False Arrest

Claiming that the district court "isolated facts from the totality of the circumstances" to find that Couch did not have probable cause to arrest Clemons for menacing,[1] Couch insists that

---

[1] "A person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." Ky. Rev. Stat. § 508.050.

"the undisputed facts indicate that Clemons was visibly behaving in a hostile manner." Appellant Br. at 15. He accepts as undisputed that Clemons stood up, approached Couch to stand five feet away from him, and told Couch that he smelled like "pig shit." Couch also concedes that Clemons may not have intended to threaten him.[2] But he then seeks to characterize those facts by saying that Clemons "showed hostility by going outside [the Kentucky State Police] and attempting to employ an altogether different law enforcement agency," "unjustifiably disobeying" Couch's order to remain seated and quiet, approaching Couch "in defiance and with hostility," and "acting in a manner that represented a legitimate threat of harm" to Couch. *Id.* at 15, 18–19.

"Mere conclusory statements that the [defendant] construe[s] the facts in the light most favorable to the plaintiff cannot confer jurisdiction upon this Court." *Thompson v. Grida*, 656 F.3d 365, 368 (6th Cir. 2011). Couch's insistence on characterizing facts and illustrating the "totality of the circumstances" demonstrates an unwillingness to make an "unqualified concession" of the best view of the facts to the plaintiff. *Booher v. N. Ky. Univ. Bd. of Regents*, 163 F.3d 395, 397 (6th Cir. 1998). The testimony from Clemons, Dustin, Napier, and Couch reveals disputes of fact over the degree of hostility shown, the content of verbal exchanges, and the parties' physical positioning and posturing at the time of the altercation. Clemons disputes that he ever made threats and testified that he was walking toward the officers to close the door behind them. Napier stated that Clemons called him because he wanted to know his rights and that the scene "wasn't what [he] would call a hostile environment." Couch himself recognizes that there are "competing accounts of disputed facts" over the circumstances leading to the physical altercation. Appellant Br. at 16.

---

[2] Viewed in the light most favorable to the plaintiff, the facts reflect that Clemons *did not intend* to threaten Couch.

If we "ignore the defendant's attempts to dispute the facts," there is no legal issue to resolve. *Bunkley v. City of Detroit*, 902 F.3d 552, 560 (6th Cir. 2018) (internal quotation marks omitted). Couch's argument amounts to a claim that the district court failed to "correctly analyze[] the relevant evidence. . . ." *Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014) (citing *Johnson*, 515 U.S. at 308, 313). Such a challenge to "evidence sufficiency" does not establish our jurisdiction over an interlocutory appeal of a denial of qualified immunity. *Id.*

In the alternative, Couch argues that, even if he cannot establish qualified immunity based on his arrest of Clemons for menacing and disorderly conduct, he nevertheless had probable cause to arrest Clemons for the other offenses listed in the arrest citation: assault of a police officer, obstruction of governmental operations, and resisting arrest. But these arguments are not properly before us. "If a party fails to raise an issue to the district court, then that party 'forfeits the right to have the argument addressed on appeal.'" *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 799 (6th Cir. 2012) (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006)). In his motion for summary judgment and in his reply to Clemons's response, Couch argued only that he had probable cause to arrest Clemons for menacing and disorderly conduct. The district court found Couch forfeited his arguments that he had probable cause to arrest Clemons for the other offenses listed in Clemons's arrest citation. "Appellate courts generally do not consider issues that the district court did not evaluate because it would be unfair to resolve a question without giving the parties an opportunity to present their evidence and arguments." *Pecsi v. City of Niles*, 674 F. App'x 544, 546 (6th Cir. 2017). The parties have not "fully briefed the issue," *id.*, and the case does not present "particular circumstances" or "a plain miscarriage of justice," *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) (citation omitted). We therefore do not consider Couch's forfeited arguments.

In sum, to the extent Couch's appeal relies on the position that he had probable cause to arrest Clemons for menacing or disorderly conduct, we have no jurisdiction to review the district court's denial of qualified immunity because the appeal has "'drift[ed] from purely legal into the factual realm'" where "[d]isputes of fact clearly exist." *Thompson*, 656 F.3d at 368 (quoting *Berryman v. Rieger*, 150 F.3d 561, 564 (6th Cir. 1998)). To the extent his appeal invokes the other alleged grounds for arrest (assault of a police officer, obstruction of governmental operations, and resisting arrest), those arguments are forfeited.

### 2. Excessive Force

Couch similarly disputes the facts underpinning the district court's denial of qualified immunity as to the excessive force claim. According to the version of events described by Clemons, Napier, and Dustin, Clemons insulted Couch, and Couch responded by immediately punching Clemons in the face. Couch argues that he "was certainly entitled to use more force than merely striking Clemons one time in the face" because Clemons and his family created "life-threatening circumstances." Appellant Br. at 31. Couch also argues that he is entitled to qualified immunity for any claim of excessive force arising from the use of his Taser and the bouncing of Clemons's head against his police car.

Couch acknowledges that the district court "refrained from making any ruling" on the claim that hitting Clemons's head on his vehicle constituted excessive force. *Id.* at 35. In fact, the district court explicitly found that it was not necessary "to determine at this juncture whether other incidents, such as deploying the taser or Clemons's claim that Trooper Couch 'bounced [his] head off the top of the cruiser,' would also defeat Trooper Couch's motion." Even if there is consensus about those events, the district court ruled, Clemons's claim for excessive force must proceed because there is a genuine dispute of material fact as to the circumstances of the initial punch.

As to the initial punch, Couch's argument does not raise a legal issue that we can "separate" from the factual dispute. *Bunkley*, 902 F.3d at 560. Without first resolving the initial factual dispute (who was the aggressor?), it is impossible to assess the legal question of whether Couch was entitled to strike Clemons in self-defense. Unlike the defendants in *Plumhoff*, Couch does not dispute the district court's finding that punching someone in response to an insult is a violation of clearly established law. 572 U.S. at 773; *see also City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (recognizing a First Amendment right to insult law enforcement officers); *Kennedy v. City of Villa Hills*, 635 F.3d 210, 215–16 (6th Cir. 2011) (explaining that the law expects officers not to respond to insults with physical force). Rather, he argues that the district court failed to appreciate that Napier said Couch "may have" felt like he was in danger from Clemons. But that testimony merely acknowledges a dispute of fact: Did Couch feel like he was in danger or not?

Because Couch argues that the district court did not properly consider the facts and does not raise any questions of law, we do not have jurisdiction over the appeal from the denial of qualified immunity for the claim of excessive force.

### B.    Kentucky Official Immunity

Couch also appeals the district court's denial of qualified official immunity under Kentucky law for Clemons's state law claims for assault, battery, and false imprisonment. As to the final state law claim for malicious prosecution, Couch argues that the district court erred in finding that qualified official immunity was unavailable and denying summary judgment due to the existence of disputed facts.

Again, we must determine whether we have jurisdiction over these portions of the appeal. "In a diversity case or a federal question action involving pendent state claims, we must look to state immunity law to determine whether a denial of immunity based on state law is appealable."

*Livermore*, 476 F.3d at 407. Kentucky permits interlocutory appeal to review a denial of qualified official immunity. *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014); *Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886–87 (Ky. 2009). We therefore consider Couch's interlocutory appeal of the denial of qualified official immunity for the assault, battery, and false imprisonment claims.

By its nature, however, there can be no qualified official immunity for a claim of malicious prosecution. "[I]f a plaintiff can prove that a police officer acted with malice, the officer has no immunity; if the plaintiff cannot prove malice, the officer needs no immunity. . . . [T]he issue of qualified official immunity is superfluous." *Martin v. O'Daniel*, 507 S.W.3d 1, 5–6 (Ky. 2016). Whether Couch acted with the requisite malice when participating in prosecuting Clemons is an unresolved factual question. We thus do not have jurisdiction over the malicious prosecution portion of the appeal.

In Kentucky, "[q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions. . . ; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (internal citation omitted). If an officer establishes a prima facie case that the allegedly tortious act was performed "within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish . . . that the discretionary act was not performed in good faith." *Id.* at 523. Bad faith is established either when the officer "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive" or when the act is objectively unreasonable—"a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position." *Id.* The district court found that Couch may have been the initial aggressor

and thus acted in bad faith.  It consequently denied Couch qualified official immunity for assault, battery, and false imprisonment.

We review a district court's denial of qualified immunity de novo.  *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996).  A plaintiff opposing a defendant's motion for summary judgment on the basis of qualified official immunity "cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial."  *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006) (quoting *Hubble v. Johnson*, 841 S.W.2d 169, 171 (Ky. 1992)).  Clemons does not contest that Couch, who was on duty, was performing functions within the scope of his authority when he accompanied Christina and her mother to Clemons's house.  It is Clemons's burden, therefore, to show by direct or circumstantial evidence that Couch did not act in good faith or, at least, that there is a genuine issue of material fact as to whether he did.  *See id.* at 475; *Yanero*, 65 S.W.3d at 523.

1.  Assault and Battery

Clemons alleges that that Couch committed assault and battery when Couch punched him in the eye, continued to attack him, deployed his Taser, and handcuffed him.  Couch does not dispute that his actions could be considered assault and battery under some circumstances, but he argues that he is entitled to qualified official immunity because he acted in good faith when he hit Clemons in self-defense and for the purpose of making a lawful arrest.

We disagree.  Viewing the facts in the light most favorable to Clemons, Couch "willfully or maliciously intended to harm the plaintiff" when he punched him in the face in response to an insult.  *Yanero*, 65 S.W.3d at 523.  Such an action constitutes bad faith.  Though Couch disputes this characterization of the facts, Clemons has met his burden by producing some credible evidence

that Couch did not act in good faith. The resulting factual dispute precludes granting qualified official immunity. *See Rowan*, 201 S.W.3d at 475.

### 2. False Imprisonment

Clemons alleges that Couch falsely imprisoned him by ordering him to sit down and shut up and also by falsely arresting him. Couch argues that in subduing and arresting Clemons, he acted in accordance with a police officer's privilege to perform a valid arrest under Kentucky law and that he is therefore entitled to immunity. *See Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007) (describing the officer's privilege to arrest an individual pursuant to a warrant or without a warrant when the officer has probable cause to arrest).

Crediting Clemons's view of the facts, Couch knocked Clemons to the ground, handcuffed him, and arrested him in response to an insult. Clemons has therefore met his burden to show evidence of Couch's bad faith based on willful or malicious intent to harm. As discussed above, disputed facts as to Couch's bad faith preclude a grant of qualified official immunity to Couch for Clemons's claim of false imprisonment.

## III.    CONCLUSION

For the reasons set forth above, we **DISMISS** for lack of jurisdiction Couch's interlocutory appeal of the district court's denial of summary judgment for Clemons's claims under § 1983 and for malicious prosecution. We **AFFIRM** the district court's denial of qualified official immunity for Clemons's claims of assault, battery, and false imprisonment.